STATE OF NORTH CAROLINA v. GEORGE ELTON HINNANT

No. 22A99

(Filed 4 February 2000)

## 1. Evidence— hearsay—victim's statements to clinical psychologist

Testimony by a clinical psychologist recounting an alleged child sexual assault victim's out-of-court statements to her was hearsay where it was offered to prove that defendant committed various sexual offenses against the alleged victim.

## 2. Evidence— hearsay—medical diagnosis or treatment exception—declarant's intent

To insure the inherent reliability of evidence admitted under the Rule 803(4) medical diagnosis or treatment exception to the hearsay rule, the proponent of such testimony must affirmatively establish that the declarant had the requisite intent by demonstrating that the declarant made the statements understanding that they would lead to medical diagnosis or treatment. This holding applies only to trials commencing on or after the certification date of this opinion or to cases on direct appeal. To the extent that cases such as *State v. Jones*, 89 N.C.App. 584, 367 S.E.2d 139 (1988), are inconsistent with this holding, they are overruled.

## 3. Evidence— hearsay—medical diagnosis or treatment exception—declarant's intent—objective circumstances of record

The trial court should consider all objective circumstances of record surrounding a declarant's statements in determining whether he or she possessed the requisite intent to receive medical treatment for purposes of the medical diagnosis or treatment exception to the hearsay rule.

## 4. Evidence— hearsay—medical diagnosis or treatment exception—two-part inquiry

Hearsay evidence is admissible under the medical diagnosis or treatment exception to the hearsay rule only when two inquiries are satisfied: (1) the trial court must determine that the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment and may consider all objective circumstances of record in determining whether the declarant possessed the requisite intent; and (2) the trial court

**STATE v. HINNANT**

[351 N.C. 277 (2000)]

must determine that the declarant's statements were reasonably pertinent to medical diagnosis or treatment.

### 5. Evidence— hearsay—medical diagnosis or treatment exception—no intent to obtain treatment

Out-of-court statements made by an alleged child victim of sexual abuse to a clinical psychologist were not made with the intent to obtain medical treatment and thus were not admissible under the medical diagnosis or treatment exception to the hearsay rule where the record does not disclose that the psychologist or anyone else explained to the child the medical purpose of the interview or the importance of truthful answers; the interview was not conducted in a medical environment; and the entire interview consisted of a series of leading questions whereby the psychologist systematically pointed to the anatomically correct dolls and asked whether anyone had or had not performed various acts with the child.

### 6. Evidence— hearsay—medical diagnosis or treatment exception—statements not pertinent to treatment

Out-of-court statements made by an alleged child victim of sexual abuse to a clinical psychologist were not reasonably pertinent to medical diagnosis or treatment and thus were not admissible under the medical diagnosis or treatment exception to the hearsay rule where the psychologist did not meet with the child until approximately two weeks after the child had received her initial medical examination on the night of the crimes, and the initial examination did not reveal any signs of trauma.

### 7. Evidence— hearsay—erroneous admission—harmless or prejudicial error

The erroneous admission of hearsay testimony by a clinical psychologist relating statements made to her by a child victim of alleged sexual offenses was not prejudicial error as to defendant's convictions of first-degree sexual offense and taking indecent liberties with a minor. However, the admission of this testimony was prejudicial error as to defendant's conviction of first-degree rape where the psychologist's hearsay testimony was the only noncorroborative evidence of penetration presented at trial.

Justice LAKE concurring.

.

STATE v. HINNANT

[351 N.C. 277 (2000)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 131 N.C. App. 591, 508 S.E.2d 537 (1998), finding no error in a judgment entered 14 March 1997, in Superior Court, Wake County. On 24 June 1999 the Supreme Court retained defendant's notice of appeal as to a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) and allowed discretionary review of additional issues. Heard in the Supreme Court 15 November 1999.

*Michael F. Easley, Attorney General, by Kendrick C. Fentress and Amy C. Kunstling, Assistant Attorneys General, for the State.*

*John F. Oates, Jr., for defendant-appellant.*

MARTIN, Justice.

On 19 February 1996 defendant was indicted for one count of first-degree rape, one count of first-degree sexual offense, and one count of taking indecent liberties with a minor. Defendant was tried before a jury at the 10 March 1997 Criminal Session of Superior Court, Wake County. The jury found defendant guilty of all charges. After finding factors in aggravation and mitigation, the trial court sentenced defendant to a consolidated active term of 384 to 460 months. After discovering an incorrect sentence calculation, the trial court entered a corrected judgment and commitment providing for a maximum sentence of 470 months. The Court of Appeals, with one judge dissenting, found no error. *See State v. Hinnant*, 131 N.C. App. 591, 597, 508 S.E.2d 537, 541 (1998). Defendant appealed to this Court as a matter of right based on the dissent below and a constitutional question. On 24 June 1999 we allowed defendant's petition for discretionary review of additional issues.[1]

At trial the state called the five-year-old alleged victim, J., as its first witness. Defendant objected to J. being permitted to testify on the ground that J., being of tender years and limited understanding, could not understand the meaning of the oath. Defendant then made a motion for the trial court to determine whether J. was competent to

---

1. We note that defendant abandoned review of the admission of hearsay statements made by the alleged victim to Officer Taylor and Theresa Burnett by not presenting arguments or citing authority against their admission in his brief. N.C. R. App. P. 28(a); *State v. Kilpatrick*, 343 N.C. 466, 475, 471 S.E.2d 624, 630 (1996); *Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 481 S.E.2d 349, *disc. rev. denied*, 346 N.C. 281, 487 S.E.2d 551 (1997).

testify. As the state proceeded to conduct *voir dire* of J., J. started crying and had to leave the courtroom. Despite repeated attempts, J. could not be calmed. During a fifteen-minute recess J. broke down crying and screaming.

Because J. could not be calmed, the state called Kim Alexander (Alexander), a clinical social worker for the Wake County Department of Human Resources. Alexander testified that, in her opinion, it was traumatizing and detrimental to J.'s well-being to be in the courtroom with defendant. Thereafter, based on J.'s continued emotional state, the trial court concluded, over defendant's objection, that J. was unable to testify and was, therefore, unavailable as a witness.

The state's evidence at trial tended to show that at the time of the alleged incidents, defendant lived at his mother's home along with his sister, Theresa Burnett (Burnett), Burnett's four-year-old daughter, J., and Burnett's infant daughter, Jaylan. On 16 December 1995 defendant left the residence and walked to a nearby store to drink alcoholic beverages with friends. Around 12:00 p.m. Burnett took J. and Jaylan to meet defendant at the store, and Burnett began drinking. Upon arriving home that afternoon, defendant entered the kitchen to cook dinner, and J. accompanied him. Burnett and Jaylan sat in the living room and watched television. Five or ten minutes later, J. ran into the living room, "running and crying and saying [defendant] had touched her." When asked where defendant had touched her, J. replied that he had touched her "on her butt" and pointed to the area. Burnett called the police, and Officers J.A. Taylor (Officer Taylor) and Sean R. Woolrich (Officer Woolrich) of the Raleigh Police Department responded to the call.

The police arrived around 4:00 p.m. and met defendant, Burnett, and J. on the porch. Burnett and defendant were intoxicated at the time. Burnett told the officers that J. told her defendant touched J.'s buttocks and vagina. J. told Officer Taylor that "[m]y uncle touched my butt this morning. When he touched me, it hurt." J. pointed to her vagina and buttocks to show both officers where defendant had touched her. J. also told Officer Woolrich that defendant put his hands into her pants that morning when she was getting out of bed and that he had also touched her buttocks and vagina when she·was playing outside on her bicycle that morning.

The police transported defendant, Burnett, J., and Jaylan to the police station for further interviews. At the police station Burnett was

uncooperative. She told Detective Albert O'Connell that defendant could not have done what J. indicated and that J. "would lie about most anything." Detective O'Connell interviewed J. in a separate room. J. told Detective O'Connell that defendant had hurt her. When asked how he hurt her, J. pointed to her crotch and her buttocks and said, "here and here." The detective handed J. an anatomically correct doll and asked her to show him where she had been hurt on the doll. J. took the clothes off the doll and pointed to the doll's vagina. J. undressed a male doll, pointed to his penis, and said, "he hurt me with that." J. then took the male doll and placed it facedown on top of the female doll.

That evening J. was taken to Wake Medical Center for an external genital examination. The doctor performing the exam reported no signs of trauma to J.'s genitals. A follow-up examination was conducted on 2 January 1996, approximately two weeks after the reported abuse. Prior to receiving follow-up medical attention, J. was interviewed by Lauren Rockwell-Flick (Rockwell-Flick), a clinical psychologist specializing in child sexual abuse.

Rockwell-Flick testified that she talked with J. about the alleged sexual abuse to obtain information for the examining physician in this case, Dr. Vivian Denise Everett (Dr. Everett). Over objection, Rockwell-Flick testified as to what J. told her prior to Dr. Everett's physical examination. Using an anatomically correct doll, Rockwell-Flick asked J. if anyone had ever touched her vagina. J. said defendant "put his hand down there" and "it hurt." Rockwell-Flick asked J. whether defendant had "kissed or licked her any place." J. said . defendant had licked her and pointed to her vagina. Rockwell-Flick asked J. if she had seen defendant's penis, and J. said yes. When asked what defendant did with his penis, J. responded, "He took it off." When Rockwell-Flick asked whether defendant ever touched J. with his penis, J. said yes. Rockwell-Flick asked J. where defendant placed it. J. pointed directly between her own legs to her vagina. When asked whether he put it on the inside or the outside, J. said, "the inside."

Dr. Everett performed a follow-up examination of J. after Rockwell-Flick's interview. Dr. Everett was concerned because J.'s hymenal tissue was very narrow, but testified that such a finding does not "definitely mean sexual abuse." Dr. Everett also stated that the exam was "consistent with the history [J.] gave Ms. Flick, which was a history of genital fondling, digital vaginal penetration and cunnilingus."

Alexander began treating J. on 7 May 1996. Alexander was qualified at trial as an expert clinical social worker with an emphasis on sexually abused children. During the course of treatment, J. told Alexander that defendant had touched her and pointed to her vagina and buttocks. Alexander testified J.'s conduct was consistent with that of a child who had been sexually abused because J. "expresses fear and anger toward the perpetrator" and demonstrates some sexualized behavior.

Defendant offered evidence at trial which tended to show as follows: On 16 December 1995 defendant did not see Burnett or J. until they arrived at the store around noon. After returning home, Burnett began arguing with defendant about the whereabouts of her boyfriend, Thomas Rice (Rice). Defendant told Burnett he did not know where Rice was. Defendant then went into the kitchen to cook dinner. According to defendant, he saw J. in the kitchen and told her to get out because grease was popping on the stove. Defendant left food in the kitchen for the others and took his meal into the dining room. The police arrived approximately thirty minutes after defendant finished his meal. Defendant testified that he was not aware Burnett had called the police until he met them on his way out the door. Defendant denied having ever touched J. in an inappropriate fashion.

Defendant also introduced the testimony of his daughter, Doralena Hayes (Hayes). Hayes testified that she arrived at defendant's residence after the alleged incident in the kitchen and heard Burnett and defendant arguing. Burnett told Hayes that defendant had touched J. When Hayes asked J. about the accusation, J. told her that Burnett had told J. to say that because Burnett was upset that Rice had not come home the previous night.

At the conclusion of trial, the jury found defendant guilty of first-degree rape, first-degree sexual offense, and taking indecent liberties with a minor. Defendant appealed.

On appeal to the Court of Appeals, defendant argued that the trial court improperly admitted hearsay testimony into evidence in violation of defendant's right to confront witnesses under the Sixth Amendment Confrontation Clause of the United States Constitution. *See Hinnant*, 131 N.C. App. at 594, 508 S.E.2d at 539. Defendant asserted that the trial court, in order to admit the proffered hearsay evidence, was required to make specific findings of fact concerning the trustworthiness and probative value of J.'s statements. *Id.*

Defendant also argued that the trial court erred in denying his motion to dismiss the charge of first-degree rape at the close of the state's evidence. *Id.* at 596, 508 S.E.2d at 540. Alternatively, defendant argued that if appellate review of the sufficiency of the evidence had been waived, and the trial court's denial of defendant's motion to dismiss did not constitute plain error, the court should consider whether defendant's trial counsel rendered ineffective assistance by failing to file a motion to dismiss at the close of all the evidence. *Id.*

The Court of Appeals found no error in the trial court's admission of the hearsay testimony. Specifically, the Court of Appeals held that the challenged statements fell within firmly rooted exceptions to the hearsay rule and, accordingly, satisfied the Confrontation Clause. *Id.* at 595, 508 S.E.2d at 540. The Court of Appeals also concluded that defendant had waived appellate review of his sufficiency of the evidence claim and that defendant failed to demonstrate that trial counsel was ineffective. *Id.* at 596, 508 S.E.2d at 540-41.

In his dissent, Judge Hunter recognized that, pursuant to Rule 10(b)(3) of the North Carolina Rules of Appellate Procedure, defendant failed to properly preserve for review the issue of the sufficiency of the evidence. *Id.* at 598, 508 S.E.2d at 541. Nonetheless, Judge Hunter opined that the court should invoke Rule 2 of the North Carolina Rules of Appellate Procedure and review the merits of defendant's claim. *Id.* Based on his review of the record, Judge Hunter concluded that the evidence was insufficient to support defendant's first-degree rape conviction. *Id.* at 601, 508 S.E.2d at 543.

Defendant contends before this Court that the Court of Appeals erred in determining that the trial court properly admitted the hearsay testimony of Rockwell-Flick under the medical diagnosis or treatment exception to the hearsay rule. We agree.

**[1]** " 'Hearsay' is a statement, other than one made by the declarant *while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.*" N.C.G.S. § 8C-1, Rule 801(c) (1999). Hearsay is not admissible except as provided by statute or the Rules of Evidence. N.C.G.S. § 8C-1, Rule 802 (1999). Rockwell-Flick's testimony was hearsay because it recounted J.'s out-of-court statements to her and was offered in evidence to prove the truth of the matter asserted—that defendant committed various sexual offenses against the alleged victim, J. The trial court admitted Rockwell-Flick's testimony under the medical diagnosis or treatment exception

to the hearsay rule. *See* N.C.G.S. § 8C-1, Rule 803(4) (1999). Rule 803(4) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

N.C.G.S. § 8C-1, Rule 803(4). Rule 803(4) requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment. *See State v. Aguallo*, 318 N.C. 590, 595-97, 350 S.E.2d 76, 80-81 (1986); *accord United States v. Iron Shell*, 633 F.2d 77, 83 (8th Cir. 1980) (federal rule), *cert. denied*, 450 U.S. 1001, 68 L. Ed. 2d 203 (1981).

Defendant contends the Court of Appeals erred in concluding that the trial court properly admitted Rockwell-Flick's hearsay testimony under Rule 803(4) without first considering J.'s purpose in making statements to Rockwell-Flick. At trial, upon defendant's objection, the trial court questioned Rockwell-Flick about her purpose for interviewing J. The trial court, however, apparently did not consider J.'s purpose in talking to Rockwell-Flick. Based on Rockwell-Flick's claim that she interviewed J. to obtain information for the examining physician, Dr. Everett, the trial court overruled defendant's objection.

This Court has not squarely addressed the question of whether the purpose inquiry under Rule 803(4) is limited to consideration of the declarant's intent. We have recognized, however, that Rule 803(4) is based on the rationale that statements made for purposes of medical diagnosis or treatment are inherently trustworthy and reliable because of the patient's strong motivation to be truthful. *See State v. Jones*, 339 N.C. 114, 145, 451 S.E.2d 826, 842 (1994) (quoting N.C.G.S. § 8C-1, Rule 803(4) official commentary (1992)), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995); *Aguallo*, 318 N.C. at 595, 350

S.E.2d at 79; *State v. Stafford*, 317 N.C. 568, 573, 346 S.E.2d 463, 467 (1986); *State v. Smith*, 315 N.C. 76, 84, 337 S.E.2d 833, 839 (1985). The " '[declarant's] health—even life—may depend on the accuracy of information supplied [to] the doctor.' " Robert R. Rugani, Jr., Comment, *The Gradual Decline of a Hearsay Exception: The Misapplication of Federal Rule of Evidence 803(4), The Medical Diagnosis Hearsay Exception*, 39 SANTA CLARA L. REV. 867, 878 (1999) (quoting 1 John E.B. Myers, EVIDENCE IN CHILD ABUSE AND NEGLECT CASES 415 (3d ed. 1992)) [hereinafter Rugani, *The Gradual Decline*]; *see* McCORMICK ON EVIDENCE § 277, at 488 (John W. Strong ed., 4th ed. 1992) [hereinafter McCORMICK ON EVIDENCE]; Robert P. Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment*, 67 N.C. L. REV. 257, 260 (1989) [hereinafter Mosteller, *Child Sexual Abuse*].

The rationale we have articulated has been recognized by many jurisdictions. *See, e.g., Iron Shell*, 633 F.2d at 83-84 (patient's motive guarantees trustworthiness of statements); *R.S. v. Knighton*, 125 N.J. 79, 85, 592 A.2d 1157, 1160 (1991) ("[T]he declarant knows that he or she is injured and therefore is motivated to describe accurately his or her symptoms and their source."); *State v. Boston*, 46 Ohio St. 3d 108, 121, 545 N.E.2d 1220, 1234 (1989) ("[T]he child's statement must have been motivated by her desire for medical diagnosis or treatment."); *State v. Barone*, 852 S.W.2d 216, 220 (Tenn. 1993) ("[M]otive of obtaining improved health increases statement's reliability and trustworthiness.").

Based on the rationale underlying Rule 803(4), we have held inadmissible statements to a doctor made solely for purposes of trial preparation rather than diagnosis or treatment. *See Jones*, 339 N.C. at 145-46, 451 S.E.2d at 842; *Stafford*, 317 N.C. at 574, 346 S.E.2d at 467; *State v. Bock*, 288 N.C. 145, 163, 217 S.E.2d 513, 524 (1975), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1209 (1976). In so holding, we recognized that the information the patient gave "lacked the indicia of reliability based on the self-interest inherent in obtaining appropriate medical treatment." *Stafford*, 317 N.C. at 574, 346 S.E.2d at 467. When the declarant's statements have been motivated by the express purpose of receiving medical treatment, however, we have consistently upheld their admission under Rule 803(4). *See, e.g., State v. Bullock*, 320 N.C. 780, 782, 360 S.E.2d 689, 690 (1987); *State v. Jackson*, 320 N.C. 452, 462, 358 S.E.2d 679, 684 (1987); *Aguallo*, 318 N.C. at 597, 350 S.E.2d at 81; *Smith*, 315 N.C. at 84, 337 S.E.2d at 839.

**STATE v. HINNANT**

[351 N.C. 277 (2000)]

Some courts, by not requiring a treatment motive on the part of declarant, have expanded the scope of the medical diagnosis or treatment exception beyond the common law moorings of Rule 803(4). *See, e.g., United States v. Joe*, 8 F.3d 1488, 1494 & n.5 (10th Cir. 1993) (explaining that Rule 803(4) requires only reasonable reliance by a physician for admission), *cert. denied*, 510 U.S. 1184, 127 L. Ed. 2d 579 (1994); *Gong v. Hirsch*, 913 F.2d 1269, 1274 n.4 (7th Cir. 1990) ("[A] fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription."); *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d Cir. 1978); *State v. Robinson*, 153 Ariz. 191, 199, 735 P.2d 801, 809 (1987). *See generally* L. Timothy Perrin, *Expert Witnesses Under Rules 703 and 803(4) of the Federal Rules of Evidence: Separating the Wheat from the Chaff*, 72 IND. L.J. 939 (1997). As a result, the "firmly rooted" status of Rule 803(4) has been questioned. *See* 4 Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 442, at 464 (2d ed. 1994) ("Admitting [hearsay] statements because doctors rely on them . . . is highly questionable."); Mosteller, *Child Sexual Abuse* at 290 ("[W]hen a [hearsay] statement is offered . . . exclusively on the basis that a medical expert has relied upon it to form her opinion, the statement is not within a firmly rooted hearsay exception."); Rugani, *The Gradual Decline* at 868 ("the current trend of expanding the . . . medical diagnosis exception is effectively making Rule 803(4) a less 'firmly rooted' and well-established hearsay exception").

The medical diagnosis or treatment exception to the hearsay rule is considered inherently reliable because of the declarant's motivation to tell the truth in order to receive proper treatment. N.C.G.S. § 8C-1, Rule 803(4) official commentary; *Jones*, 339 N.C. at 145, 451 S.E.2d at 842. If a treatment motive on the part of the declarant is not required, however, the jurisprudential basis upon which we conclude that statements of the declarant are inherently reliable is undeniably diminished. It has been observed that evidence admitted under Rule 803(4) without considering the declarant's motive

> has less inherent reliability than evidence admitted under the traditional common-law standard underlying the physician treatment rule. . . . [T]he veracity of the declarant's statements to the physician is less certain where the statements need not have been made for purposes of promoting treatment or facilitating diagnosis in preparation for treatment.

*Morgan v. Foretich*, 846 F.2d 941, 952 (4th Cir. 1988) (Powell, J., concurring in part and dissenting in part).

**[2]** To ensure the inherent reliability of evidence admitted under Rule 803(4), we reaffirm our adherence to the common law rationale underlying the rule—that a patient has a strong motivation to be truthful in order to obtain appropriate medical treatment. *See* N.C.G.S. § 8C-1, Rule 803(4) official commentary; *Jones*, 339 N.C. at 145, 451 S.E.2d at 842; *Stafford*, 317 N.C. at 573, 346 S.E.2d at 467. Accordingly, the proponent of Rule 803(4) testimony must affirmatively establish that the declarant had the requisite intent by demonstrating that the declarant made the statements understanding that they would lead to medical diagnosis or treatment. Our holding applies only to trials commencing on or after the certification date of this opinion or to cases on direct appeal. To the extent that cases such as *State v. Jones*, 89 N.C. App. 584, 367 S.E.2d 139 (1988), are inconsistent with our holding, they are overruled.

Having so concluded, we recognize the difficulty of determining whether a declarant understood the purpose of his or her statements. Because of this evidentiary challenge, some courts have refused to apply Rule 803(4) in cases involving young children. *See, e.g., Webb v. Lewis*, 44 F.3d 1387, 1390-91 (9th Cir. 1994), *cert. denied*, 514 U.S. 1128, 131 L. Ed. 2d 1003 (1995); *United States v. White*, 11 F.3d 1446, 1450 (8th Cir. 1993) (insufficient evidence to establish that child-victim understood social worker was conducting an interview in order for her or another to provide medical diagnosis or treatment); *Ring v. Erickson*, 983 F.2d 818, 820 (8th Cir. 1992) (no evidence that child knew she was talking to doctor); *State v. Wade*, 136 N.H. 750, 756, 622 A.2d 832, 836 (1993). *See generally* Krista M. Jee, Note, *Hearsay Exceptions in Child Abuse Cases: Have the Courts and Legislatures Really Considered the Child?*, 19 WHITTIER L. REV. 559, 569 (1998) ("The rationale of the medical treatment exception fails when applied to a child declarant . . . .").

Other courts, while adhering to the common law rationale underlying Rule 803(4), have looked to objective record evidence to determine whether the declarant had the proper treatment motive. *See, e.g., United States v. Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993); *United States v. Renville*, 779 F.2d 430, 438-39 (8th Cir. 1985); *Boston*, 46 Ohio St. 3d at 121, 545 N.E.2d at 1234. For example, some courts have found the intent requirement satisfied where some adult explained to the child the need for treatment and the importance of truthfulness. *See, e.g., Renville*, 779 F.2d at 438-39 (physician explained purpose of examination to eleven-year-old victim). Others have considered the presence of corroborating physical evidence. *See, e.g., United States*

STATE v. HINNANT

[351 N.C. 277 (2000)]

*v. Nick*, 604 F.2d 1199, 1202 (9th Cir. 1979). The latter example, however, is no longer a viable consideration. The United States Supreme Court has squarely rejected the use of corroborating physical evidence to support the trustworthiness of hearsay testimony. *See Idaho v. Wright*, 497 U.S. 805, 822, 111 L. Ed. 2d 638, 656-57 (1990). "Hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.*

Courts have also considered with whom, and under what circumstances, the declarant was speaking. This Court has stated that Rule 803(4) " 'might' " include " [s]tatements to hospital attendants, ambulance drivers, or even members of the family.' " *Smith*, 315 N.C. at 84, 337 S.E.2d at 839 (quoting N.C.G.S. § 8C-1, Rule 803(4) official commentary); *see* McCORMICK ON EVIDENCE, at 489. Other courts have recognized that a young child is more likely to possess the requisite treatment motive when speaking to medical personnel. *See, e.g., State v. Harris*, 247 Mont. 405, 411-12, 808 P.2d 453, 456-57 (1991); *State v. Dever*, 64 Ohio St. 3d 401, 410, 596 N.E.2d 436, 444 (1992) ("Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present."), *cert. denied*, 507 U.S. 919, 122 L. Ed. 2d 672 (1993); *State v. Eastham*, 39 Ohio St. 3d 307, 311, 530 N.E.2d 409, 413 (1988) (Brown, J., concurring). In addition, courts have analyzed the surrounding circumstances, including the setting of the interview and the nature of the questioning. *White*, 11 F.3d at 1450; *Barrett*, 8 F.3d at 1300. These objective circumstances provide evidence "that the child understood the [witness'] role in order to trigger the motivation to provide truthful information." *Barrett*, 8 F.3d at 1300.

[3] In our view, the trial court should consider all objective circumstances of record surrounding declarant's statements in determining whether he or she possessed the requisite intent under Rule 803(4).

The second inquiry under Rule 803(4) is whether the statements of the declarant are reasonably pertinent to diagnosis or treatment. *See* N.C.G.S. § 8C-1, Rule 803(4); *Aguallo*, 318 N.C. at 595-97, 350 S.E.2d at 80-81. Defendant contends that J.'s statements to Rockwell-Flick, a clinical psychologist, made two weeks after J.'s initial medical examination, were not reasonably pertinent to medical diagnosis or treatment.

STATE v. HINNANT

[351 N.C. 277 (2000)]

The common law rationale we have recognized is equally relevant during the second inquiry under Rule 803(4). If the declarant's statements are not pertinent to medical diagnosis, the declarant has no treatment-based motivation to be truthful. We have held, for example, that a victim's statements to rape task force volunteers, when the victim had already received initial diagnosis and treatment, were not reasonably pertinent to medical diagnosis or treatment. *Smith*, 315 N.C. at 86, 337 S.E.2d at 840. The logical inference arising from *Smith* is that Rule 803(4) does not include statements to nonphysicians made after the declarant has already received initial medical treatment and diagnosis. This inference comports with the common law rationale underlying the rule. If the declarant is no longer in need of immediate medical attention, the motivation to speak truthfully is no longer present.

We have also refused to apply Rule 803(4) where the victim was interviewed solely for purposes of trial preparation. *See Stafford*, 317 N.C. at 574, 346 S.E.2d at 467; *Bock*, 288 N.C. at 163, 217 S.E.2d at 524. In such cases, the declarant's statements "lack[] the indicia of reliability based on the self-interest inherent in obtaining appropriate medical relief." *Stafford*, 317 N.C. at 574, 346 S.E.2d at 467.

[4] We hold that hearsay evidence is admissible under Rule 803(4) only when two inquiries are satisfied. First, the trial court must determine that the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment. The trial court may consider all objective circumstances of record in determining whether the declarant possessed the requisite intent. Second, the trial court must determine that the declarant's statements were reasonably pertinent to medical diagnosis or treatment.

[5] In the present case, after thoroughly reviewing the record and transcript, we cannot conclude that J. understood Rockwell-Flick was conducting the interview in order to provide medical diagnosis or treatment. Rockwell-Flick testified that she interviewed J. in order to relay information to Dr. Everett, the examining physician, about what had or had not happened to J. While this testimony provides Rockwell-Flick's motive for obtaining the statements at issue, it sheds no light on the motive of the four-year-old declarant who provided them.

There is no evidence that J. had a treatment motive when speaking to Rockwell-Flick. The record does not disclose that Rockwell-Flick or anyone else explained to J. the medical purpose of

the interview or the importance of truthful answers. *See Renville*, 779 F.2d at 438-39. In addition, the interview was not conducted in a medical environment. Instead, it was held in what Rockwell-Flick described at trial as a "child-friendly" room, one in which all of the furniture was child-sized. In our view, such a setting did not reinforce to J. her need to provide truthful information. *See Barrett*, 8 F.3d at 1300. Therefore, there is no affirmative record evidence indicating that J.'s statements were medically motivated and, therefore, inherently reliable. *See* N.C.G.S. § 8C-1, Rule 803(4) official commentary; *Stafford*, 317 N.C. at 574, 346 S.E.2d at 467; *Bock*, 288 N.C. at 162-63, 217 S.E.2d at 524.

The lack of inherent reliability in J.'s statements is further demonstrated by the manner in which the interview was conducted. The entire interview consisted of a series of leading questions, whereby Rockwell-Flick systematically pointed to the anatomically correct dolls and asked whether anyone had or had not performed various acts with J. "Inherent in this type of suggestive questioning is the danger of planting the idea of sexual abuse in the mind of the child." *Harris*, 247 Mont. at 415, 808 P.2d at 459; *see* Robert G. Marks, Note, *Should We Believe the People Who Believe the Children?: The Need For a New Sexual Abuse Tender Years Hearsay Exception Statute*, 32 HARV. J. ON LEGIS. 207, 222 (1995) (discussing dangers of suggestive interview practices).

Because the record fails to demonstrate that J. possessed the requisite intent when speaking with Rockwell-Flick, J.'s statements were not made for purposes of medical diagnosis or treatment.

[6] Likewise, J.'s statements to Rockwell-Flick were not reasonably pertinent to medical diagnosis or treatment. Rockwell-Flick did not meet with J. until approximately two weeks after J. had received her initial medical examination. The initial examination was conducted on the night in question and consisted of an external genital exam. That examination did not reveal any signs of trauma. Rule 803(4) was not "created to except from the operation of the hearsay rule" statements made to a nontreating clinical psychologist two weeks after the alleged victim received initial medical diagnosis. *See Smith*, 315 N.C. at 86, 337 S.E.2d at 840. Therefore, J.'s statements to Rockwell-Flick were not reasonably pertinent to medical diagnosis or treatment.

Because J.'s statements to Rockwell-Flick were not made for purposes of, or reasonably pertinent to, medical diagnosis or treat-

STATE v. HINNANT

[351 N.C. 277 (2000)]

ment, the Court of Appeals erred in determining that Rockwell-Flick's testimony was properly admitted under Rule 803(4).

We note that Rockwell-Flick's testimony may be admissible under the residual exceptions to the hearsay rule. *See* N.C.G.S. § 8C-1, Rules 803(24), 804(b)(5) (1999); *see also Wright*, 497 U.S. 805, 111 L. Ed. 2d 638 (analyzing hearsay statements of child declarant under Idaho's Rule 803(24)); Mosteller, *Child Sexual Abuse*, at 294 (suggesting Rule 803(24) as a more appropriate exception to the hearsay rule in child sexual abuse cases). These exceptions allow the admission of hearsay not falling within a firmly rooted exception but "having equivalent circumstantial guarantees of trustworthiness." N.C.G.S. § 8C-1, Rules 803(24), 804(b)(5). Hearsay may not be admitted under a residual exception, however, unless the trial court makes certain required findings of fact and conclusions of law. *See State v. Deanes*, 323 N.C. 508, 515, 374 S.E.2d 249, 254-55 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989); *State v. Triplett*, 316 N.C. 1, 8-9, 340 S.E.2d 736, 740-41 (1986); *Smith*, 315 N.C. at 92, 337 S.E.2d at 844.

In the instant case, the state does not contend that Rockwell-Flick's testimony was admissible under the residual exceptions. Therefore, we do not address this question.

[7] The erroneous admission of hearsay "is not always so prejudicial as to require a new trial." *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986). Rather, defendant must show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at . . . trial . . . ." N.C.G.S. § 15A-1443(a) (1999). Concerning defendant's convictions for first-degree sexual offense and taking indecent liberties with a minor, defendant has not met his burden. Based on our review of the evidence of record, there is no reasonable possibility that, absent the trial court's error, a different result would have been reached at trial. Therefore, we affirm the Court of Appeals as to those convictions.

As to defendant's first-degree rape conviction, however, we cannot say that admitting the hearsay evidence was harmless. Rockwell-Flick's improperly admitted hearsay testimony was the only noncorroborative evidence of penetration presented at trial. Therefore, we reverse the decision of the Court of Appeals as to defendant's conviction for first-degree rape and remand this case to the Court of Appeals for further remand to the Superior Court, Wake County, for proceedings consistent with this opinion.

STATE v. HINNANT

[351 N.C. 277 (2000)]

AFFIRMED IN PART AND REVERSED IN PART.

Justice LAKE concurring.

I concur with the majority's holding that it is the declarant's motivation to receive medical treatment or diagnosis which supports the "inherent reliability" characteristic of the firmly rooted hearsay exception of Rule 803(4). Recognizing the significant interest of society in protecting our children from any type of abuse and the inherent difficulty in determining whether a child's statement was made for the purpose of medical diagnosis or treatment, I am compelled to emphasize that although the testimony as presented in the instant case is not admissible under Rule 803(4), such evidence, if properly obtained, might be admissible under the residual hearsay exceptions, Rule 803(24) (availability of declarant immaterial) and Rule 804(b)(5) (declarant unavailable), as suggested by the majority.

I am further compelled to emphasize the importance of the forethought and proper interview techniques required on the part of child advocates (medical, legal or otherwise) in obtaining statements from children to ensure, to the fullest extent possible, their trustworthiness and the need for trial courts to adequately present findings of fact and conclusions of law supporting that trustworthiness. The standard for admissibility is increased under the residual exceptions to the hearsay rule, as discussed by this Court in *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986), and *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Therefore, planning is necessary to ensure that the admissibility requirements of notice, materiality, trustworthiness, probative value and the interests of justice are met and properly presented.