STATE OF NORTH CAROLINA v. VANDEL NORMAN

No. COA08-1165

(Filed 5 May 2009)

## 1. Evidence— hearsay—medical diagnosis or treatment exception

The trial court did not err in a multiple first-degree rape, multiple first-degree sexual offense, and multiple taking indecent liberties with a child case by excluding testimony of a physician's assistant about what the minor child victim's mother said to her during the minor child's first medical examination because: (1) defendant was not attempting to admit statements by the victim through the testimony of her mother under the N.C.G.S. § 8C-1, Rule 803(4) hearsay exception since her mother was not present at trial, but instead was attempting to admit the out-of-court statements of the victim's mother; and (2) assuming *arguendo* that a third party's statements to medical personnel could be admissible under the Rule 803(4) medical diagnosis or treatment hearsay exception, the statements by the victim's mother that the victim never made any disclosures to her about the abuse revealed nothing about the victim's condition but instead tended to show the mother's intent to exculpate herself, defendant failed to establish that the mother made her statements for the purpose of diagnosis or treatment of the victim, and the fact of whether the victim told her mother about the abuse was not relevant to her diagnosis or treatment.

**2. Sexual Offenses— first-degree sexual offense—motion to dismiss—sufficiency of evidence—anal penetration**

The trial court did not err by denying defendant's motion to dismiss the charges of first-degree sexual offense even though defendant contends the State failed to provide sufficient evidence of anal penetration because the evidence, viewed in the light most favorable to the State, including the victim's testimony and the corroboration testimony of three others, was sufficient.

**3. Sexual Offenses— instructions—conditional directed verdicts—possibility of multiple verdicts for single offense**

The jury instructions in a prosecution on four counts of first-degree sexual offense did not result in conditional directed verdicts since the instructions could not have led the jury to believe that it could return a verdict of guilty in all four first-degree sexual offense charges if the jury was satisfied of defendant's guilt beyond a reasonable doubt for only one of those offenses.

**4. Appeal and Error— preservation of issues—issue already decided in prior cases**

Although defendant contends the trial court erred by failing to instruct the jury that it had to be unanimous as to each specific incident of first-degree rape, first-degree sexual offense, and taking indecent liberties with a minor, this assignment of error is dismissed because defendant concedes our Supreme Court has already ruled against this contention.

Appeal by Defendant from judgments entered 4 October 2007 by Judge Clifton W. Everett, Jr. in Superior Court, Chowan County. Heard in the Court of Appeals 24 March 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for Defendant-Appellant.*

McGEE, Judge.

Vandel Norman (Defendant) was convicted of three counts of first-degree rape, four counts of first-degree sexual offense, and four counts of taking indecent liberties with a child on 4 October 2007. The trial court entered five judgments on Defendant's convictions. In judgment number one, the trial court consolidated two of Defendant's

STATE v. NORMAN

[196 N.C. App. 779 2009)]

first-degree rape convictions and sentenced Defendant to 240 months to 297 months in prison. In judgment number two, the trial court sentenced Defendant to 240 months to 297 months in prison on the third count of first-degree rape, to run consecutively to the first judgment. In judgment number three, the trial court consolidated two first-degree sexual offense convictions and sentenced Defendant to 240 months to 297 months in prison to run consecutively to the second judgment. In judgment number four, the trial court consolidated two first-degree sexual offense convictions and sentenced Defendant to 240 months to 297 months in prison to run consecutively to the third judgment. In judgment number five, the trial court consolidated four taking indecent liberties with a child convictions and sentenced Defendant to 19 months to 23 months in prison, to run consecutively to the fourth judgment. Defendant appeals.

At trial, the State presented evidence that at the time the incidents occurred between September 2002 and December 2003, the victim, J.G., was between four and five years old. During that time, J.G. lived in Edenton with Defendant, her stepfather; her mother; her brother, J.A.G.; and two other siblings.

At the time of trial, J.G. was nine years old. J.G. testified that when she was living with Defendant, he would sometimes call her upstairs to his room. Defendant would be watching a "sex movie." J.G. said Defendant "[stuck] his ding-a-ling in my back or my bottom. Sometimes he does it in the front." The State clarified that "in the front" was the place where J.G. "pees" and that by "ding-a-ling" J.G. meant the "private part . . . that boys have." The State asked J.G. if Defendant "put [his ding-a-ling] in [J.G.'s] butt . . . inside of it?" J.G. answered, "yes." J.G. testified these incidents happened more than ten times. J.G.'s brother, J.A.G., heard J.G. crying and asked why she was crying. J.G. told J.A.G. she was crying because Defendant stuck "his ding-a-ling in front and my butt and peed in my mouth."

J.A.G. testified to the following. J.A.G. heard J.G. crying when she was upstairs with Defendant. J.A.G. said that when J.G. came downstairs "her eyes [were] red and puffy" and her "nose was running." J.A.G. asked J.G. why she was crying, and she told him Defendant "stuck his ding-a-ling in her front . . . in her front private part and in her butt." J.A.G. said this happened "more than five" times and "maybe" more than ten. J.A.G. told their mother about the incidents and she told him that "she would either call the cops if she ever caught [Defendant] or kick [Defendant] out of the house."

Ida Rogers (Rogers), a children's therapist, met with J.G. after the incidents of sexual abuse were reported to the Department of Social Services and testified to the following. Rogers met with J.G. on 19 August 2004. J.G. drew a picture of a girl and identified body parts and their uses. J.G. identified the "butt" and genitals and told Rogers that "you pee up at front and you do the other in the back." J.G. told Rogers that she told her brother J.A.G. what happened because J.A.G. heard her crying. Rogers asked J.G. why she was crying and J.G. shouted at Rogers "because it hurt." J.G. told Rogers again on 31 August 2004 that "it hurts when [Defendant] sticks his ding-a-ling in my front and in my back." J.G. told Rogers that Defendant had "stuff that kind of looked like grease and [Defendant] put [it] on his ding-a-ling before he put it in my front and my back." J.G. told Rogers that she had told her mother about the incidents and that her mother said "if [J.G.] told anyone, [she] was going to get a whipping." J.G. told Rogers: "[Mother] said that it never happened, but it really did."

Maria Angelica Taylor (Taylor), a physician's assistant who conducted J.G.'s physical examination, testified that she conducted J.G.'s vaginal exam and found J.G. had "no lacerations, no scars, [and] no bruising" and her hymen was present. Taylor confirmed that it was "normal for a hymen to be totally normal even after sexual penetration." Taylor said she conducted a rectal examination and that J.G.'s anus had "no lesions; no laxity, no fissures and a skin tag." Taylor said that sexual abuse was still possible because the anal area was meant to stretch without tearing. Taylor said that her examination neither confirmed nor ruled out sexual abuse.

Defendant testified at trial that "nine times out of ten, [he] would not be left alone with the children," and that if he was left alone with the children, it was "probably no more than ten or fifteen minutes." Defendant denied he ever touched J.G., fondled her, or made her watch dirty movies.

At the close of Defendant's evidence, Defendant moved to dismiss all of the charges against him. The trial court denied Defendant's motion. Defendant appeals.

I.

[1] In his assignment of error number seven, Defendant argues the trial court erred in excluding testimony by physician's assistant Taylor about what J.G.'s mother said to her during J.G.'s first medical examination. Defendant contends this testimony was admissible as

statements made for the purpose of medical diagnosis or treatment of J.G. under N.C. Gen. Stat. § 8C-1, Rule 803(4).

The State argues that because Defendant failed to make an offer of proof at trial, he has waived this argument for appellate review. "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985). After the trial court sustained the State's objection to Taylor's testimony about what J.G.'s mother told Taylor, Defendant failed to make an offer of proof. However, the record on appeal contains an offer of proof statement to which the State stipulated. The offer of proof statement reads:

> In Part B of a Medical Report prepared on [4 January 2008] about alleged sexual abuse and neglect of J.G., Physician Assistant [Taylor] wrote the following with respect to statements made to her by Beth Norman, J.G.'s mother, during a physical examination of J.G.: "[J.G.'s mother] does not believe anything happened to [J.G.]. [She] reports that [J.G.] has not made any disclosures to her, and she had never heard [J.G.'s] sibling say anything about anybody touching [J.G.] inappropriately until [the Department of Social Services] showed up at [her] doorstep."

Because the excluded evidence appears in the record, Defendant preserved this issue for appeal.

Defendant argues the statements by J.G.'s mother to Taylor were admissible pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(4) as statements made for the purpose of medical diagnosis or treatment of J.G. N.C. Gen. Stat. § 8C-1, Rule 803(4) defines statements for the purpose of medical diagnosis or treatment as "[s]tatements . . . describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." N.C. Gen. Stat. § 8C-1, Rule 803(4) (2007). We review *de novo* the trial court's determination of whether an out-of-court statement is admissible pursuant to Rule 803(4). *See State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000). In order to be admissible under Rule 803(4), the testimony must meet a two-part inquiry: "(1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were rea-

sonably pertinent to diagnosis or treatment." *Hinnant*, 351 N.C. at 284, 523 S.E.2d at 667.

Our Supreme Court has recognized that young children cannot independently seek medical attention. Therefore, a child's statements to a non-medical person, such as a therapist, social worker, or "even members of the family" may be admissible under Rule 803(4) when the statements meet the two-pronged test outlined in *Hinnant. Id.* at 288, 523 S.E.2d at 670. In our Courts' previous decisions in which statements were admitted under Rule 803(4), the non-medical person to whom the child made the statements was physically present and testified to the child's statements at trial. However, in the present case, Defendant was not attempting to admit statements by J.G. through the testimony of her mother under the Rule 803(4) hearsay exception, because her mother was not present at trial. Rather, Defendant was attempting to admit the out-of-court statements of J.G.'s mother to Taylor under Rule 803(4).

Defendant cites and we have found only one prior decision in which our Courts have addressed the question of whether a third-party's statements to medical personnel can be admissible under Rule 803(4). In *State v. Jones*, our Supreme Court said that statements made by the defendant's wife and mother to a doctor were inadmissible under Rule 803(4) because the "text of the rule makes it quite clear that only the statements of the person being diagnosed or treated are excepted from the prohibition against hearsay." *State v. Jones*, 339 N.C. 114, 146, 451 S.E.2d 826, 842 (1994). However, we have found no published opinion that cites *Jones* for this proposition. Further, Kenneth S. Broun, in *Brandis and Broun on North Carolina Evidence* § 217, p. 181 (6th ed. 2004), cautions that this language in *Jones* is dictum, "of uncertain validity in light of the actual language of the rule," and "is questionable . . . in other contexts, such as where a parent or other caretaker has made statements to a physician concerning the health of an infant or an impaired person."

Assuming *arguendo* that a third-party's statements to medical personnel could be admissible under the Rule 803(4) hearsay exception, the statements would still need to meet the two-prong test outlined in *Hinnant*. Concerning the first prong, "the proponent of Rule 803(4) testimony must affirmatively establish that the declarant had the requisite intent by demonstrating that the declarant made the statements understanding that they would lead to medical diagnosis or treatment." *Hinnant*, 351 N.C. at 287, 523 S.E.2d at 669.

Regarding the first prong of the *Hinnant* test, Defendant argues that because J.G.'s mother made her statements to Taylor during J.G.'s first medical examination, her statements were for the purpose of medical diagnosis of J.G. However, the statements by J.G.'s mother that J.G. never made any disclosures to her about the abuse reveals nothing about J.G.'s condition. To the contrary, the evidence tends to show that J.G.'s mother's intent was more likely to exculpate herself. J.G.'s mother was under investigation for child neglect by the Department of Social Services at the time she made her statements to Taylor. Both J.G. and J.A.G. testified they had told their mother about Defendant's abuse of J.G., and that their mother did nothing in response. Rodgers testified that J.G. said her mother threatened that J.G. would "get a whipping" if J.G. told anyone about the abuse. Because Defendant failed to affirmatively establish that J.G.'s mother made her statements to Taylor for the purpose of diagnosis or treatment of J.G., her statements fail the first prong of the *Hinnant* test.

The statements by J.G.'s mother to Taylor also fail the second prong of the *Hinnant* test which requires the statements be reasonably pertinent to medical diagnosis or treatment. The fact of whether J.G. did or did not tell her mother about the abuse was not relevant to J.G.'s diagnosis or treatment. J.G.'s alleged silence does not describe her "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof." N.C.G.S. Rule 803(4).

Therefore, assuming a third-party's statements to medical personnel could be admissible under Rule 803(4), the trial court nonetheless properly excluded the statements of J.G.'s mother to Taylor because her statements failed both prongs of the *Hinnant* test. Defendant's assignment of error number seven is overruled.

II.

[2] In his assignments of error numbers eight and thirty-three, Defendant argues the trial court erred in denying Defendant's motion to dismiss the charges of first-degree sexual offense because the State failed to provide sufficient evidence of anal penetration.

The standard of review for a motion to dismiss in a criminal trial is "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citing *State v.*

*Roseman*, 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971)). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Kraus*, 147 N.C. App. 766, 769, 557 S.E.2d 144, 147 (2001) (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)).

First-degree sexual offense is defined as "a sexual act . . . with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen. Stat. § 14-27.4 (2007). N.C. Gen. Stat. § 14-27.1 defines a "sexual act" as "cunnilingus, fellatio, analingus, . . . anal intercourse . . . [or the] penetration, however slight, by any object into the genital or anal opening of another person's body." N.C. Gen. Stat. § 14-27.1 (2007). To prove sexual offense on the basis of anal intercourse in the present case, the State must prove that Defendant's penis penetrated J.G.'s anus. *See State v. Hicks*, 319 N.C. 84, 90, 352 S.E.2d 424, 427 (1987).

Defendant argues the present case is similar to *Hicks*. In *Hicks*, the State's only evidence of anal penetration was the victim's testimony that the defendant "put his penis in the back of [the victim]." *Id.* Our Supreme Court reversed the defendant's conviction of first-degree sexual offense, holding that "[g]iven the ambiguity of [the victim's] testimony as to anal intercourse, and absent corroborative evidence," the evidence of sexual offense was insufficient to support the verdict. *Id.*

We find the present case distinguishable from *Hicks* and more analogous to *State v. Griffin*. In *Griffin*, the victim testified that the defendant "stuck his private parts up her butt," which caused her to cry in pain. *State v. Griffin*, 319 N.C. 429, 431, 355 S.E.2d 474, 475 (1987). The State presented corroborative testimony by the victim's mother and a physician. *Id.* at 431, 355 S.E.2d at 476. The physician testified that the victim's rectal examination showed no signs of trauma but that the absence of injury would not have been inconsistent with the abuse the victim described. *Id.* Our Supreme Court held that "[t]he child's testimony describing [the] defendant's commission of anal intercourse, corroborated by that of her mother and the exam-

ining physician, [was] sufficient competent evidence supporting proof of the essential elements of first degree sexual offense." *Id.* at 433, 355 S.E.2d at 477.

In the present case, J.G. testified that Defendant "[stuck] his ding-a-ling in my back or my bottom." The State asked J.G. if Defendant "put [his ding-a-ling] in [J.G.'s] butt . . . inside of it?" J.G. answered, "yes." J.G. testified that her brother J.A.G. heard her crying and she told him she was crying because Defendant stuck "his ding-a-ling in front and my butt and peed in my mouth."

The State also presented corroborative testimony of J.A.G., Taylor, and Rogers. J.A.G. testified that when he asked J.G. why she was crying, she told him Defendant "stuck his ding-a-ling in her front . . . in her front private part and in her butt." Taylor testified that J.G.'s rectal examination neither confirmed nor ruled out sexual abuse. Rogers testified that during a therapy session, J.G. identified the "butt" and genitals and told Rogers that "you pee up at front and you do the other in the back." J.G. told Rogers that "it hurts when [Defendant] sticks his ding-a-ling in my front and in my back" and that Defendant had "stuff that kind of looked like grease and [Defendant] put [it] on his ding-a-ling before he put it in my front and my back."

Viewing the evidence in the light most favorable to the State, we hold the State presented sufficient evidence of anal penetration to allow a jury to find that Defendant committed first-degree sexual offense. Therefore, we conclude the trial court did not err in denying Defendant's motion to dismiss. Defendant's assignments of error numbers eight and thirty-three are overruled.

III.

[3] In his assignment of error number seventeen, Defendant argues the trial court erred by instructing the jury that they could convict Defendant of four counts of first-degree sexual offense if the jury found that Defendant had committed first-degree sexual offense once. Defendant contends the trial court's instructions violated his right to a jury verdict on all counts of first-degree sexual offense because the jury instructions resulted in conditional directed verdicts.

In support of his argument, Defendant points to a portion of the jury instructions in which the trial court instructed the jury: "If you find . . . Defendant engaged in *a* sexual act with [J.G.] . . . it

would be your duty to return a verdict of guilty as to . . . *each one* of those charges in count one of those cases." (emphasis added). However, in reviewing jury instructions for error, the jury instructions must be considered in their entirety. *State v. Davis*, 321 N.C. 52, 59, 361 S.E.2d 724, 728 (1987) (citing *State v. Poole*, 305 N.C. 308, 324, 289 S.E.2d 335, 345 (1982)). In the present case, the trial court instructed the jury:

> [W]ith respect to case number[s] 05 CRS 739, 740, 741, and 742 . . . Defendant is charged in each one of those cases in count one of first degree sex offense. . . . [F]or you to find [] Defendant guilty of . . . these offenses, any one or more of them, the State must prove three things beyond a reasonable doubt.

We hold the jury instructions did not result in conditional directed verdicts because reviewing the jury instructions in their entirety, the instructions could not have led the jury to believe that it could return a verdict of guilty in all four first-degree sexual offense charges if the jury was satisfied of Defendant's guilt beyond a reasonable doubt for only one of those offenses. *See State v. Schultz*, 294 N.C. 281, 240 S.E.2d 451 (1978). Therefore, we find Defendant's argument without merit and overrule his assignment of error number seventeen.

IV.

[4] In his assignments of error numbers twelve, fourteen, and nineteen, Defendant argues the trial court erred by failing to instruct the jury that it had to be unanimous as to each specific incident of first-degree rape, first-degree sexual offense, and taking indecent liberties with a minor. However, Defendant concedes that our Supreme Court ruled against his contention in *State v. Lawrence*. *See State v. Lawrence*, 360 N.C. 368, 627 S.E.2d 609 (2006). Therefore, Defendant's assignments of error numbers twelve, fourteen, and nineteen are overruled.

Defendant did not argue his remaining assignments of error and therefore they are abandoned pursuant to N.C.R. App. P. 28(b)(6).

No error.

Judges GEER and BEASLEY concur.