STATE OF NORTH CAROLINA v. JAMES RUSSELL SMITH, JR.

No. COA00-616-2

(Filed 7 May 2002)

**1. Appeal and Error— remand to Court of Appeals—determination of issue by Supreme Court**

There was sufficient evidence to support a conviction for second-degree murder where the dissent in the first Court of Appeals opinion in this matter concluded that the evidence of malice was sufficient to withstand a motion to dismiss and the Supreme Court reversed for the reasons set forth in the dissent. The Supreme Court therefore determined that there was sufficient evidence of an intentional act sufficient to show malice.

**2. Evidence— explanations for prior injuries to child—admissible as to credibility**

There was no plain error in a conviction for the second-degree murder of a child in an instruction intended to inform the jury that it could consider the credibility of explanations offered by defendant for other injuries sustained by the victim when determining whether the injury that caused the victim's death was inflicted intentionally.

Appeal by defendant from judgment entered 15 December 1999 by Judge J. B. Allen, Jr. in Orange County Superior Court. Originally heard in the Court of Appeals 18 April 2001. An opinion was filed 4

September 2001, *State v. Smith*, 146 N.C. App. 1, 551 S.E.2d 889 (2001). The case was appealed and, by *per curiam* opinion of the North Carolina Supreme Court on 7 March 2002, the opinion was reversed for the reasons stated in the dissenting opinion, and the case was remanded to the Court of Appeals to address the remaining assignments of error. *State v. Smith*, 355 N.C. 268, 559 S.E.2d 786 (2002). Reheard without additional briefing or oral arguments.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Steven M. Arbogast, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

HUNTER, Judge.

James Russell Smith, Jr. ("defendant") appeals the trial court's judgment convicting him of the second degree murder of his wife's two-year-old daughter, Amanda. On remand from the Supreme Court, we address defendant's remaining assignments of error and conclude that there was no error in defendant's trial.

A comprehensive review of the facts of this case may be found in this Court's first opinion in this case. *Smith*, 146 N.C. App. at 3-6, 551 S.E.2d at 890-92. In that opinion, a majority of this panel reversed defendant's conviction for second degree murder on the grounds that the State had failed to produce sufficient evidence on the element of malice to withstand defendant's motion to dismiss. The dissenting opinion disagreed, and concluded that the evidence of malice was sufficient to withstand the motion to dismiss. On appeal from this Court to the Supreme Court pursuant to N.C. Gen. Stat. § 7A-30(2) (1999), the Supreme Court reversed this Court for the reasons stated in the dissenting opinion and remanded to this Court to address the remaining assignments of error. *Smith*, 355 N.C. 268, 559 S.E.2d 786.

As noted in this Court's first opinion, defendant has raised two assignments of error relating to his trial. Defendant contends (1) the trial court erred in denying his motion to dismiss, and (2) the trial court committed plain error in its instruction to the jury on how to assess whether the evidence supported a conclusion that the injury which caused Amanda's death was intentionally inflicted, as required for second degree murder. As to the first assignment of error, defend-

ant argues that there was insufficient evidence: (1) as to him being the perpetrator of Amanda's death (the "identity issue"); (2) as to him having the required malice for second degree murder (the "malice issue"); and (3) as to him having intentionally inflicted a fatal injury upon Amanda (the "intent issue"). In our first opinion, both the majority and the dissent rejected defendant's argument on the "identity issue," but the majority agreed with defendant, and therefore reversed his conviction, on the "malice issue." Neither the majority nor the dissent reached the "intent issue," nor did we reach defendant's second assignment of error. We now address these two issues.

We reiterate the applicable standard of review:

When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Whether evidence presented constitutes substantial evidence is a question of law for the court. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged. "In so doing the trial court should only be concerned that the evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence." It is not the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss.

In ruling on a motion to dismiss:

"The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion."

*State v. Vause*, 328 N.C. 231, 236-37, 400 S.E.2d 57, 61 (1991) (emphasis omitted) (citations omitted).

## I.

**[1]** Defendant argues that there was insufficient evidence of intent to support his conviction for second degree murder. " 'Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation.' " *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000) (citation omitted). "While an intent to kill is not a necessary element of second degree murder, the crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death." *State v. Wilkerson*, 295 N.C. 559, 580, 247 S.E.2d 905, 917 (1978). Thus, although it is necessary to show that the defendant generally intended to engage in the act itself that caused the victim's death, this requirement is generally subsumed within the element of malice. *See id.*

Here, the dissent in our first opinion concluded that the evidence of malice was sufficient to withstand defendant's motion to dismiss. *Smith*, 146 N.C. App. at 23, 551 S.E.2d at 902. Furthermore, the dissent stated that "[i]t was the defendant's 'conscious object' or 'purpose' to strike Amanda," and that "[a] jury could have reasonably concluded that defendant willfully and maliciously struck Amanda's head and violently shook her." *Id.* at 22, 551 S.E.2d at 901. As noted, our Supreme Court reversed for the reasons set forth in the dissent. Therefore, our Supreme Court has already determined that there was sufficient evidence of some intentional act sufficient to show malice, and we need not (and, indeed, may not) revisit the issue of intent here.

## II.

**[2]** Defendant's sole remaining assignment of error is that the trial court committed plain error in its instructions to the jury. The trial court's instructions to the jury included the following statements, in accordance with N.C.P.I., Crim. 206.35:

> If you find from the evidence beyond a reasonable doubt that at the time when the victim, Glasya Lynn Amanda Cook, died, she had sustained multiple injuries at different locations on her body, and that those injuries were at different stages of healing, and if you find that the physical condition of the victim's body was inconsistent with any explanation as to the cause of the victim's injuries, given at or about the time of her death, you may consider such facts, along with all other facts and circumstances, in determining whether the injury which caused the victim's

death was intentionally inflicted and not the produce of accident or misadventure.

Because defendant did not object to this instruction at trial, defendant is required to show not only that the instruction was error, but further that it had a probable impact on the jury's finding of guilt. *See, e.g., State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Evidence was presented at trial tending to show that defendant told Investigator Ted Thorpe during an interview that Amanda had fallen off a toilet in the bathroom on Monday night and that the fall had resulted in a bump on her head. Defendant argues that, aside from this statement by defendant, no other evidence was presented at trial involving any explanation offered by defendant as to the cause of any of Amanda's multiple injuries. Defendant also notes that the forensic pathologist witness testified that this bump did not contribute to Amanda's death. Thus, defendant contends that the jury likely understood the trial court's instruction to mean that, if the jury found that defendant gave a false explanation for the bump on Amanda's head occurring Monday night, the jury could consider this fact in determining whether defendant intentionally inflicted the fatal injury on Wednesday night or early Thursday morning. Defendant contends that this would have been improper.

N.C.P.I., Crim. 206.35 is entitled "Second Degree Murder (Child Beating) Covering Involuntary Manslaughter as a Lesser Included Offense" (footnote omitted). The notes to this instruction indicate that it is "designed primarily for use in cases where the State seeks to establish second degree murder on the theory that the victim died as a result of child beating by the defendant, and where there is little or no direct evidence of the precise manner of the victim's death or of the defendant's intent." N.C.P.I., Crim. 206.35. The instruction then lists five elements of the offense: (1) the victim received a fatal injury; (2) the injury was a proximate cause of the victim's death; (3) the injury was inflicted intentionally and not by accident or misadventure; (4) the person who inflicted this injury was the defendant; and (5) the defendant acted with malice. N.C.P.I., Crim. 206.35. As to the third of these elements, the instruction provides:

> An injury is inflicted intentionally when the person who caused it intended to apply the force by which it was caused. Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.

An intent to apply force to the body of another may be inferred from [the act itself] [the nature of the injury] [the conduct or declarations of the person who applied it] [other relevant circumstances].

*Id.* This explanation of an injury inflicted intentionally is then followed by the language at issue here regarding the jury's consideration of the defendant's explanations for injuries which are inconsistent with the physical condition of the victim's body.

We believe that the instruction at issue is intended to inform the jury that, for purposes of determining whether the injury that caused the victim's death was inflicted intentionally by the defendant, the jury may consider the credibility of any explanations offered by the defendant for *other* injuries sustained by the victim. If the jury believes such explanations are not credible, and that, therefore, defendant likely caused such other injuries, the jury may, in turn, use this determination to conclude that the defendant possessed the requisite intent with regard to the injury or injuries that caused the victim's death. To the extent that defendant argues that the jury, in determining whether defendant had the requisite intent to cause the injury that resulted in Amanda's death, should not have been allowed to consider evidence indicating that defendant may have caused other unrelated injuries to Amanda and subsequently provided false explanations for such injuries, defendant is mistaken. The law in this state allows the jury to do just this.

We find support for this conclusion in cases addressing the distinct but related issue of whether evidence of a defendant's prior acts of physical abuse of a child are admissible at a trial charging defendant with the second degree murder of the child.

As a general rule, evidence which tends to show that a defendant committed another offense, independent of and distinct from the offense for which the defendant is being prosecuted, is inadmissible on the issue of guilt if its only relevancy is to show the character of the defendant or his disposition to commit an offense of the nature of the one charged.

*State v. Hitchcock,* 75 N.C. App. 65, 69, 330 S.E.2d 237, 240, *disc. review denied,* 314 N.C. 334, 333 S.E.2d 493 (1985). However, if such evidence "tends to prove any other relevant fact it will not be excluded merely because it also tends to show guilt of another crime." *Id.*

DIXIE LUMBER CO. OF CHERRYVILLE v. N.C. DEP'T OF ENV'T, HEALTH & NAT. RES.

[150 N.C. App. 144 (2002)]

Where the evidence shows, as it does here, that the victim was a battered child who died as a result of injuries which could have been caused by acts of physical abuse administered by the defendant, evidence of prior acts of physical abuse [by the defendant] is relevant and admissible to show the defendant's intent and to show that the defendant acted with malice.

*Id.*

The evidence in this case tended to show that Amanda had sustained multiple physical injuries on various occasions and that such injuries could have been caused by physical abuse. Such evidence was admissible for the reasons stated above, and, moreover, defendant's explanations for any of Amanda's other injuries, even if such injuries were not directly related to her death, were relevant and admissible and the veracity of such explanations could be considered by the jury in determining whether defendant intentionally inflicted the injuries that caused Amanda's death. Thus, given the facts of this case, we believe the instruction accurately stated the law and was properly given by the trial court.

In summary, as to the issues remaining after remand from our Supreme Court, we find no error.

No error.

Judges WALKER and TYSON concur.