STATE OF NORTH CAROLINA v. CHRISTOPHER LEON CARTER, SR.

No. COA01-1532

(Filed 5 November 2002)

**1. Evidence— hearsay—medical treatment exception**

The trial court did not err in a felony child abuse and assault with a deadly weapon inflicting serious injury case by admitting the minor child victim's statements under the N.C.G.S. § 8C-1,

Rule 803(4) medical treatment exception to the hearsay rule without affording defendant an opportunity to have the child examined by a defense psychologist and/or to voir dire the child as to his intent when he made the statements in question, because: (1) neither a psychological examination nor a voir dire examination is necessary for the determination of whether the declarant had the requisite intent to qualify his statements under the medical treatment exception; (2) defendant did not request the trial court to conduct a voir dire examination of the child; and (3) while defendant excepted to a doctor's testimony regarding the child's statement to him, defendant waived this objection by permitting three nurses to testify without objection to the child's identical statement.

2. **Assault; Child Abuse and Neglect— felony child abuse— assault with a deadly weapon inflicting serious injury— intentionally kicking child—motion to dismiss—sufficiency of evidence**

   The trial court did not err in a felony child abuse and assault with a deadly weapon inflicting serious injury case by denying defendant's motion to dismiss based on alleged insufficient evidence to prove that defendant intentionally kicked the minor child victim, because: (1) while the statement "my daddy kicked me" standing alone is insufficient to prove intent, the expert testimony presented indicated the minor child had sustained an extremely unusual severe and traumatic injury consistent with having been kicked; and (2) as the child's injury was the result of a high-energy impact equivalent to the force sustainable in a car wreck, it is reasonable to infer the injury was not accidental in nature but was the result of an intentional kick.

3. **Assault; Child Abuse and Neglect— felony child abuse— assault with a deadly weapon inflicting serious injury—intentionally kicking child—doctrine of merger inapplicable**

   The trial court did not err in a felony child abuse and assault with a deadly weapon inflicting serious injury case by failing to arrest one of the felony charges under the doctrine of merger, because each of the two offenses with which defendant was charged requires proof of elements not included in the definition of the other offense.

STATE v. CARTER

[153 N.C. App. 756 (2002)]

Appeal by defendant from judgments dated 4 June 2001 by Judge Lindsay R. Davis in Rockingham County Superior Court. Heard in the Court of Appeals 8 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Kirk Randleman, for the State.*

*C. Orville Light for defendant appellant.*

GREENE, Judge.

Christopher Leon Carter, Sr. (Defendant) appeals judgments dated 4 June 2001 entered consistent with a jury verdict finding him guilty of felony child abuse and assault with a deadly weapon inflicting serious injury.

After being charged on 2 October 2000 with (1) felony child abuse for intentionally committing an assault resulting in serious physical injury and (2) assault with a deadly weapon inflicting serious injury on his three-year-old son C.J., Defendant petitioned the trial court for the aid of a child psychologist to assist in his defense. In an order dated 22 May 2001, the trial court authorized Defendant to spend up to $1,000.00 to obtain the services of a child psychologist to assist in the case. The order, however, did "not authorize the psychologist to examine [C.J.]" Defendant subsequently filed a motion *in limine* dated 29 May 2001 in which he requested that the State be prohibited from introducing any hearsay declarations made by C.J. during his hospitalization between 9 and 10 August 2000.

During the *voir dire* hearing on the motion *in limine*, the nurses and doctors who had talked to C.J. during his hospitalization testified they had examined C.J. and upon asking him what was wrong with him, C.J. had told each of them "my daddy kicked me." The trial court found C.J.'s statements, spoken in a medical environment to personnel who were dressed in medical clothing and performing routine medical assessments, were made for the purpose of diagnosing and treating C.J. The trial court concluded the statements were thus properly admissible under the medical treatment exception to the hearsay rule.

Defendant also requested an examination of C.J. by a psychologist. Defendant argued to the trial court that "unless [C.J. was] voluntarily produced for [Defendant's] psychological expert to examine [him] . . . [, C.J.'s] declarations . . . should be inadmissible." The trial court denied Defendant's motion.

At trial, Janet Vercellino (Vercellino), a nurse at the Morehead Memorial Hospital, testified she first met C.J. when his grandmother brought him to the emergency room on the morning of 9 August 2000. Vercellino asked C.J. what was wrong with him, whereupon C.J. replied "[d]addy kicked me." When Vercellino inquired where C.J. was hurting, he pointed to the left side of his abdomen. After Vercellino took C.J.'s vital signs, C.J. was examined by two more nurses. Both of the nurses testified at trial that, upon inquiry, C.J. had told them "my daddy kicked me." Defendant did not object to the nurses' testimony.

Dr. Richard Medlin (Dr. Medlin) testified he had reviewed C.J.'s CAT scan and determined C.J. to have a transection of the pancreas, meaning it "was cut in half." As this was a potentially fatal injury, Dr. Medlin arranged C.J.'s transfer to another hospital where he underwent surgery the next day. According to Dr. Medlin, the type of injury sustained by C.J. was "extremely unusual." When asked whether a child could injure himself in this manner by falling off a bed, Dr. Medlin explained this "would be very unusual" because "this is a high-energy injury" requiring a lot of force. Furthermore, once this type of injury was sustained, Dr. Medlin would have expected symptoms to manifest themselves within minutes as opposed to days.

Dr. Shelley Kreiter (Dr. Kreiter), who testified as an expert in pediatrics with specialties in child abuse and neglect, testified C.J.'s injury was not only traumatic but consistent with having been kicked. Kreiter further stated C.J. "would not have fallen on a barbell on Monday," as alleged by Defendant, "and been a well child on Tuesday only to be a severely ill, a sick child needing surgery on Wednesday. There was too long of a well period in there." Dr. Charles Turner (Dr. Turner), whom the trial court recognized as an expert in the field of pediatric surgery, explained "[t]here[ was] a significant energy to cause a rupture of the pancreas." This energy would be closely equivalent to the energy involved in a "car wreck." Over Defendant's objection, Dr. Turner testified C.J. had told him "[m]y father kicked me."

At the close of the State's evidence, Defendant moved to dismiss the charges against him. The trial court denied the motion, and Defendant proceeded to call his witnesses. C.J.'s mother, Kimberly Dillard Carter (Carter), testified for the defense that two days prior to being hospitalized C.J. had fallen off his bed and landed on a barbell. When she had asked C.J. if he was all right, he had told her he was. Carter and Defendant, however, noted that C.J. did not have much of an appetite after this incident.

At the close of all the evidence, Defendant renewed his motion to dismiss, which was again denied. The jury subsequently found Defendant guilty of felony child abuse and assault with a deadly weapon inflicting serious injury, and the trial court sentenced Defendant to two consecutive prison terms.

The issues are whether the trial court erred in: (I) admitting C.J.'s statements under the medical treatment exception to the hearsay rule without (1) affording Defendant an opportunity to have C.J. examined by a defense psychologist and/or (2) to *voir dire* C.J. as to his intent when he made the statements in question; (II) denying Defendant's motion to dismiss; and (III) failing to arrest one of the felony charges under the doctrine of merger.

I

[1] Defendant argues the trial court should have (1) permitted a defense psychologist to examine C.J. and/or (2) allowed a *voir dire* examination of C.J. in order to determine whether he possessed the requisite intent necessary for the admissibility of his statements under the medical treatment exception to the hearsay rule. We disagree.

"Statements made for purposes of medical diagnosis or treatment and describing . . . past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof" are admissible in court as an exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 803(4) (2001). "Rule 803(4) requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000).

In *Hinnant*, the only case Defendant cites as support for his argument, our Supreme Court "recognize[d] the difficulty of determining whether a declarant[, especially a young child,] understood the purpose of his or her statements." *Id.* at 287, 523 S.E.2d at 669. The Supreme Court held that the declarant's intent could be determined by consideration of "all objective circumstances of record surrounding [the] statements."[1] *Id.* at 288, 523 S.E.2d at 670. Thus, neither a psychological examination nor a *voir dire* examination is necessary

_____

1. As Defendant did not argue that the objective evidence in this case was insufficient to establish C.J.'s intent, we need not address this issue. *See* N.C.R. App. P. 28(a).

under *Hinnant* for the determination of whether the declarant had the requisite intent to qualify his statements under the medical treatment exception of Rule 803(4).[2]

We further note Defendant did not request the trial court to conduct a *voir dire* examination of C.J. *See* N.C.R. App. P. 10(b)(1) (in order to preserve a question for appellate review, the appellant must have presented the trial court with a timely request or motion). Moreover, while Defendant excepted to Dr. Turner's testimony regarding C.J.'s statement to him, Defendant waived this objection by permitting the three nurses to testify without objection to C.J.'s identical statement. *See State v. Campbell,* 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979) ("the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character"). Accordingly, Defendant's assignments of error as to this issue are overruled.

II

[2] Defendant next contends the trial court erred in denying his motion to dismiss because the evidence presented by the State was insufficient to prove Defendant intentionally kicked C.J.

In ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and that the defendant is the perpetrator of the offense. *State v. Harding,* 110 N.C. App. 155, 162, 429 S.E.2d 416, 421 (1993). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "If the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence." *State v. Smith,* 40 N.C. App. 72, 79, 252 S.E.2d 535, 540 (1979) (emphasis omitted).

One of the elements of felony child abuse the State must prove in this case, is that the defendant "intentionally commit[ted] an assault upon the child." N.C.G.S. § 14-318.4(a) (2001). Proof of assault, which naturally is also an element of assault with a deadly

---

2. As the facts of this case do not raise the issue, we do not address whether upon a trial court's determination that the objective evidence is insufficient to find the requisite intent, the *State* is entitled to either a psychological examination or a *voir dire* examination of the child in order to determine his subjective intent.

weapon inflicting serious injury, requires evidence of " 'an intentional attempt, by violence, to do injury to the person of another.' " *State v. Britt*, 270 N.C. 416, 419, 154 S.E.2d 519, 521 (1967) (citation omitted) (defining assault).

> "An injury is inflicted intentionally when the person who caused it intended to apply the force by which it was caused. Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. An intent to apply force to the body of another may be inferred from [the act itself,] [the nature of the injury,] [the conduct or declarations of the person who applied it, or] [other relevant circumstances]."

*State v. Smith*, 150 N.C. App. 138, 142-43, 564 S.E.2d 237, 240 (quoting N.C.P.I.—Crim. 206.35 (1998)), *disc. review denied*, 355 N.C. 756, 566 S.E.2d 87 (2002).

While the statement "my daddy kicked me," standing alone, is insufficient to prove intent, the expert testimony presented in this case indicated C.J. had sustained an "extremely unusual," severe, and traumatic injury. Dr. Kreiter further testified C.J.'s injury was consistent with having been kicked. As C.J.'s injury was the result of a "high-energy" impact, equivalent to the force sustainable in a "car wreck," it is reasonable to infer the injury was not accidental in nature but was the result of an intentional kick. The trial court therefore properly denied Defendant's motion to dismiss.

### III

**[3]** Finally, Defendant asserts the trial court erred in failing to arrest one of the felony charges under the doctrine of merger. We disagree.

> The common law doctrine of merger is a judicial tool to prevent the subsequent prosecution of a defendant for a lesser[-] included offense once he has been acquitted or convicted of the greater. It is primarily a device to prevent the defendant from being placed twice in jeopardy for the same offense.

*State v. Moore*, 34 N.C. App. 141, 142, 237 S.E.2d 339, 340 (1977). Where the offenses charged are based on "two distinct criminal statutes which require proof of different elements . . . , the punishment of each of these separate offenses by consecutive sentences does not violate the constitutional prohibition against double jeopardy." *State v. Evans*, 125 N.C. App. 301, 304, 480 S.E.2d 435, 436

(1997). In this case, each of the two offenses with which Defendant was charged requires proof of elements not included in the definition of the other offense. Thus, Defendant's argument is without merit.

No error.

Judges WYNN and McGEE concur.