STATE OF NORTH CAROLINA v. MITCHELL WAYNE WATTS

No. COA99-1234

(Filed 19 December 2000)

**Evidence— hearsay—not medical diagnosis and treatment exception**

The trial court erred in a first-degree statutory rape and indecent liberties case by admitting hearsay statements of a nurse and two doctors regarding the alleged victim's statements as substantive evidence under the medical diagnosis and treatment exception of N.C.G.S. § 8C-1, Rule 803(4), because: (1) the record does not reveal that the victim understood she was making the statements for medical purposes, or that the medical purpose of the examination and importance of truthful answers were adequately explained to her; and (2) it cannot be said that there was no reasonable possibility that a different result would have been reached when the doctors' renditions of the incident were among the most damaging evidence offered and the nurse's testimony was the only direct evidence of actual penetration. However, this testimony may be admissible as substantive evidence with the proper foundation under the residual hearsay exceptions of N.C.G.S. § 8C-1, Rules 803(24) and 804(b)(5), and under N.C.G.S. § 8C-1, Rule 703 pertaining to expert witness testimony.

Appeal by defendant from judgment entered 21 May 1999 by Judge C. Preston Cornelius in Randolph County Superior Court. Heard in the Court of Appeals 18 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane Rankin Thompson for the State.*

*Moser, Schmidly, Mason & Roose, by Richard G. Roose for defendant-appellant.*

FULLER, Judge.

On 2 March 1997 defendant Mitchell Wayne Watts was arrested and charged with first degree statutory rape and taking indecent liberties with a minor. Evidence admitted at trial tended to show that on the afternoon of 28 February 1997 defendant arrived home as his wife, Vickie Watts (Watts), was leaving to take her sister home. Defendant's three young daughters, as well as his eleven year-old stepdaughter (hereinafter referred to as S), were at home with defendant. Watts testified that upon returning home approximately one half hour later, she thought she saw defendant leaving S's bedroom. Watts noticed S standing in the doorway of her bedroom closet naked from the waist down and holding her underwear. S was unresponsive to Watts' questions as to why she was unclothed.

Watts questioned S about the incident the following day when defendant was not home. S responded that defendant had touched her private parts, whereupon Watts took S to a Family Crisis Center and to the hospital emergency room for treatment. S was later examined by a Child Medical Examiner and a Child Mental Health Examiner.

Over defendant's hearsay objection, the State introduced testimony from Nurse Gail Rushing, who examined S upon her arrival at the hospital. Nurse Rushing read into evidence her emergency room notes from her examination of S, including a statement that S "revealed that dad in her room on her bunk bed put his private part all the way in her private part. . . ."

The State also introduced, over defendant's objections, testimony of Dr. Mary Johnson, the Child Medical Examiner, and Dr. Christopher Sheaffer, the Child Mental Health Examiner. Dr. Johnson testified that S said defendant, wearing only a towel, entered S's room while she was playing, took her clothes off and made her lay down, and that defendant "put his privates" against her. Dr. Sheaffer also

testified S relayed to him that defendant entered her bedroom while she was playing, removed her clothes and made her lay down, and that defendant removed his towel and touched her with his private parts.

As to all three witnesses, the trial court instructed the jury that such testimony was only to be considered for the purpose of corroborating the testimony of a later witness and not for the purpose of proving the truth of the matter asserted. However, during S's *voir dire* testimony, she was unresponsive to questions asked by both the State and the defense. The trial court ruled S incompetent to testify, and the State therefore rested its case without offering her testimony.

Defendant moved to strike the corroborative testimony, followed by a motion to dismiss. The trial court, without specifically addressing the motion to strike, denied defendant's motion to dismiss. Upon argument from defense counsel, the trial court revisited the admissibility of the testimony previously admitted as corroborative. The trial court concluded that the testimony of "medical authorities and psychologists, and investigating officers" was allowed into evidence under the medical exception to the hearsay rule, with certain portions of such testimony being admitted under the "medical diagnosis and treatment" exception; that the testimony was found to be reliable and trustworthy due to the consistency of the hearsay statements; that some evidence was admissible under the "state of mind" exception to the hearsay rule; and that some of the evidence was admissible as substantive such that the jury could determine the credibility of the testimony.

Defendant testified on his own behalf. At the close of all evidence, defendant moved to dismiss the charges against him, moved for a mistrial based on the admission of corroborative evidence without victim testimony, and moved to strike the corroborative evidence. The trial court denied all motions and the jury returned a verdict of guilty on both charges. Defendant appeals.

---

Defendant brings forth nine assignments of error on appeal, including that the trial court erred in admitting hearsay statements under the "medical examination and treatment" exception as substantive evidence. Because we agree with defendant that the admission of certain hearsay statements as substantive evidence under the medical diagnosis and treatment exception was error entitling him to a new trial, we need not address remaining arguments.

N.C. Gen. Stat. § 8C-1, Rule 803(4) (1999) of the North Carolina Rules of Evidence provides an exception to the rule excluding hearsay for statements made for the purpose of medical diagnosis or treatment:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

This exception has been interpreted by our Supreme Court as requiring a two-part inquiry: "(1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000); *see also, State v. McGraw*, 137 N.C. App. 726, 529 S.E.2d 493, *disc. review denied*, 352 N.C. 360, — S.E.2d — (2000); *In re Clapp*, 137 N.C. App. 14, 526 S.E.2d 689 (2000).

The *Hinnant* court elaborated on the evidence required to meet the two-part test, holding that the first prong requires the proponent "affirmatively establish that the declarant had the requisite intent by demonstrating that the declarant made the statements understanding that they would lead to medical diagnosis or treatment." *Hinnant*, 351 N.C. at 287, 523 S.E.2d at 669. Regarding the second prong, the Supreme Court determined that to ensure admission of statements made only for treatment purposes, "Rule 803(4) does not include statements to non-physicians made after the declarant has already received initial medical treatment and diagnosis." *Id.* at 289, 523 S.E.2d at 670.

Thus, the *Hinnant* court excluded expert hearsay testimony of a child sexual abuse psychologist where there was "no evidence that [the child] had a treatment motive when speaking to [the expert]. The record does not disclose that [the expert] or anyone else explained to [the child] the medical purpose of the interview or the importance of truthful answers." *Id.* at 289, 523 S.E.2d at 671. In sum, there was simply "no affirmative record evidence indicating that [the child's] statements were medically motivated and, therefore, inherently reliable." *Id.* at 290, 523 S.E.2d at 671. Moreover, because the child's statements were made to the expert two weeks after the initial medical examination, the Supreme Court determined the evidence also failed to satisfy the pertinency requirement of Rule 803(4). *Id.*

STATE v. WATTS

[141 N.C. App. 104 (2000)]

The Supreme Court recently followed principles enumerated in *Hinnant. State v. Waddell*, 351 N.C. 413, 527 S.E.2d 644 (2000). In holding expert witness testimony pertaining to sexual abuse inadmissible under Rule 803(4), the court again noted that the record "lacks any evidence that there was a medical treatment motivation on the part of the child declarant or that [the expert] or anyone else explained to the child the medical purpose of the interview or the importance of truthful answers." *Id.* at 418, 527 S.E.2d at 648.

Applying these principles here, the testimony of Nurse Rushing and Drs. Johnson and Sheaffer regarding S's statements was improperly admitted as substantive evidence under Rule 803(4). As in *Hinnant* and *Waddell*, the record is devoid of evidence that S understood she was making the statements to any of the three for medical purposes, or that the medical purpose of the examination and importance of truthful answers were adequately explained to her. Indeed, Nurse Rushing testified that when Watts brought S in for treatment, "[S] really didn't know what was going on. She acted like she didn't know what she was even there for." Moreover, both Drs. Johnson and Sheaffer examined S approximately three months after her initial medical examination, making S's statements even less medically pertinent than those in *Hinnant* elicited two weeks following initial examination.

We are cognizant that the erroneous admission of hearsay does not always amount to prejudicial error requiring a new trial. *See, e.g.*, *Waddell*, 351 N.C. at 419, 527 S.E.2d at 648; *Hinnant*, 351 N.C. at 291, 523 S.E.2d at 672. While the *Waddell* court concluded admission of the expert's hearsay testimony was not prejudicial so as to require a new trial, the Supreme Court qualified the holding by noting that the issue was under a plain error review, and that with several other witnesses' substantive testimony, there was an "abundance of evidence properly presented at trial, particularly defendant's own extensive and detailed admissions. . . ." *Waddell*, 351 N.C. at 421, 527 S.E.2d at 650.

In the present case, however, there was no such abundance of substantive evidence before the court. Indeed, both experts' rendition of the incident according to S was among the most damaging evidence offered by the State. Moreover, Nurse Rushing's hearsay testimony was the only direct evidence of actual penetration. We therefore cannot hold there was no reasonable possibility that a different result would have been reached absent the error, and thus, that the admission of the hearsay testimony was harmless.

However, this holding does not foreclose the possibility that such testimony is admissible as substantive evidence with the proper foundation. As was Justice Lake in *Hinnant*, we too are compelled to emphasize that although the testimony at issue here was not admissible under Rule 803(4), such evidence may be admissible with the proper foundation under the residual hearsay exceptions, Rule 803(24), Rule 804(b)(5), and, we believe, Rule 703 pertaining to expert witness testimony.

Reversed and remanded.

Chief Judge EAGLES and TIMMONS-GOODSON concur.