STATE OF NORTH CAROLINA v. WELDON EUGENE THORNTON, DEFENDANT

No. COA02-303

(Filed 1 July 2003)

**1. Evidence— hearsay—medical diagnosis or treatment exception**

The trial court did not commit plain error in a first-degree rape and taking indecent liberties with a minor case by failing to instruct the jury that statements made by the victim during interviews with a licensed clinical social worker were not substantive evidence, because the statements were admissible under N.C.G.S. § 8C-1, Rule 803(4) when the victim made the statements to the social worker with the understanding that they would lead

STATE v. THORNTON

[158 N.C. App. 645 (2003)]

to medical diagnosis or treatment and that the statements were reasonably pertinent to diagnosis or treatment.

## 2. Evidence— sexual abuse—improper opinion testimony— motion for mistrial

The trial court did not abuse its discretion or commit plain error in a first-degree rape and taking indecent liberties with a minor case by failing to declare a mistrial sua sponte, or alternatively inquiring further of the jury whether it could disregard certain testimony given by a clinical social worker that was stricken by the court, because: (1) the trial court gave prompt and emphatic instructions to disregard the social worker's statement; and (2) there is a presumption that the jury has complied with the trial court's instructions.

## 3. Constitutional Law— effective assistance of counsel— motion for appropriate relief

Although defendant's motion for summary disposition of his motion for appropriate relief is denied, the motion for appropriate relief alleging ineffective assistance of counsel is remanded to the trial court for an evidentiary hearing and ruling by that court.

Appeal by defendant from judgment entered 14 September 2001 by Judge Evelyn W. Hill in Alamance County Superior Court. Heard in the Court of Appeals 8 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Jill B. Hickey, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals judgments entered upon jury verdicts convicting defendant of one count of first degree rape and one count of taking indecent liberties with a minor. For the reasons discussed below, we conclude there was no error. We remand defendant's Motion for Appropriate Relief to the superior court for the taking of evidence and such further proceedings as it deems necessary.

### Factual Background

The child victim, BM, testified at trial. She was eight years old when she testified, and seven years old when the events at issue

STATE v. THORNTON

[158 N.C. App. 645 (2003)]

occurred. BM testified that defendant worked across the street from her father's house, and that one day defendant came to the house and told her to go into a room. BM testified that she "walked in there" and defendant "told me to pull down my skirt and my underwear, and so I did. And, umm, he did, too. And he got right on top of me. And umm, he started going up and down, and he kissed me."

BM also testified that on another occasion, while she was at defendant's house, "he done the same thing." When asked exactly what defendant did, BM answered that defendant put his "private part" in her "private part," and her testimony further clarified her understanding of a "private part."

BM further testified that on another occasion, when defendant was taking BM home from church, defendant turned off onto a dirt road, stopped the truck they were traveling in, and told her they were looking for "deers" in the field. BM went on to testify that "He got out of the, out on his side. He went around. And, umm, and then when he got around to my side, he opened the door. And he pulled down my, my skirt and my underwear. And then he got on top of me and got up and down, then he kissed me again."

BM also testified that defendant, on yet another occasion, put his "private part" in her mouth, though BM could not remember when or where this happened.

Danny Walker, a juvenile investigator with the Alamance County Sheriff's Department, testified that he investigated these allegations upon referral of the case from Orange County Department of Social Services. He testified that, during an interview, BM told him about the incidents involving defendant. Upon defendant's motion, the trial court instructed the jury that Mr. Walker's testimony could only be used to corroborate BM's testimony.

On 27 October 2000, Dr. Adrea Theodore, a pediatrician at the University of North Carolina School of Medicine, conducted a physical examination of BM at the Center for Child and Family Health. Dr. Theodore was tendered and accepted at trial as an expert in "child medical examinations and pediatric medicine." She testified that she observed a "notch" on BM's hymen that she considered to be a "significant finding," which was "suspicious for penetrating trauma." When asked whether in her opinion BM exhibited signs consistent with being sexually abused, Dr. Theodore testified that "based on our physical exam which shows a finding that's suspicious for penetrating trauma, that is suggestive of sexual abuse."

On 27 October 2000 and 3 November 2000, Donna Potter, a licensed clinical social worker with the Duke University Department of Psychiatry and the Center for Child and Family Health, interviewed BM. Ms. Potter testified at trial. When the prosecution began to question her about her interviews with BM, defense counsel objected and asked for an instruction limiting Ms. Potter's testimony regarding BM's out-of-court statements to corroboration. The court overruled the objection on the grounds that an expert is allowed to testify to matters relied upon in forming an opinion, stating that:

> If she relied upon them in making, in forming her opinion, I assume she knew she was going to give and they're admissible. If we get to the point that she is not asked the appropriate opinion question and doesn't say she relied upon it, then we'll strike them all.

Later in her testimony, the prosecutor asked Ms. Potter whether BM exhibited any characteristics of a sexually abused child. At the point, the court interrupted the examination and stated:

> I want to be sure that we're very clear here, Counselor . . . . That this witness may testify about the characteristics in general of sexually abused children, which she has not done yet. Having done that, she may then testify about what symptoms, similar symptoms that she may have observed in this child. But she may not then take the next step. So if she's going to testify about symptoms in general, if she's going to testify about symptoms this child exhibited which are symptoms that are generally seen, let's get the generally seen symptoms testified about first.

After the prosecutor elicited testimony about symptoms of child sexual abuse in general, the witness testified that, "My opinion is that [BM] has absolutely been sexually abused." The court instructed the jury to disregard the statement, and reminded the witness that the question was whether the child showed symptoms that were consistent with abuse. The witness answered, "Yes, she did."

At the conclusion of the direct examination of Ms. Potter, the prosecution played a videotape of a portion of Ms. Potter's second interview with [BM]. Prior to playing the videotape, defense counsel stipulated to its authenticity and lodged no other objection to the tape. After the tape played, defense counsel stated that he did not object to its admission into evidence.

**STATE v. THORNTON**

[158 N.C. App. 645 (2003)]

Argument

[1] Defendant first argues that the trial court committed plain error by not instructing the jury that statements made by the victim during interviews with Ms. Potter were not substantive evidence. We disagree.

"In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). Our Supreme Court has emphasized that:

> the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Black*, 328 N.C. 191, 200-01, 400 S.E.2d 398, 404 (1991) (internal citations and quotation marks omitted).

The medical diagnosis or treatment exception to the hearsay rule provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> ***
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

N.C. Gen. Stat. § 8C-1, Rule 803(4). "Rule 803(4) requires a two-part inquiry: (1) whether the declarant's statements were made for pur-

poses of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000). In *Hinnant*, our Supreme Court reaffirmed the inherent reliability of evidence admitted under Rule 803(4), but required that "the proponent of Rule 803(4) testimony must affirmatively establish that the declarant had the requisite intent by demonstrating that the declarant made the statements understanding that they would lead to medical diagnosis or treatment." *Id.* at 287, 523 S.E.2d at 669. In ascertaining the intent of the declarant, "all objective circumstances of record surrounding declarant's statements" should be considered. *Id.* at 288, 523 S.E.2d at 670.

In *Hinnant*, a child sexual abuse case, the Court found that there was no evidence that the child victim had a treatment or diagnostic motive when speaking to a clinical psychologist specializing in child sexual abuse. The circumstances that led the Court to this conclusion were: the record did not disclose that anyone explained to the child the medical purpose of the interview or the importance of truthful answers; the interview was not conducted in a medical environment; the interview consisted of a series of leading questions by the psychologist who pointed to anatomically correct dolls and asked whether anyone had performed various acts with the child; and the child victim did not meet with the psychologist until two weeks after her initial medical examination. *Id.* at 290, 523 S.E.2d at 671. Based upon the foregoing, the Court reversed the decision of this Court and held that the child victim's interview statements were not admissible under Rule 803(4).

The present case is easily distinguishable from *Hinnant*. BM's medical and psychological evaluations took place at the Center for Child and Family Health in Durham. The Center utilizes a team approach to the diagnosis and treatment of sexually abused children. Dr. Theodore, who conducted the medical examination of BM, and Social Worker Potter, who conducted the interviews, work in the same building and their offices are just doors apart. Both the physical examination and the initial interview were conducted on 27 October 2000.

Potter testified that at the beginning of the interview she spent time making sure that BM understood that she was "actually in a doctor's office." Potter further testified that BM "was very aware of the fact that she was in a doctor's office," and that Potter "worked with a

doctor and that my job is to help her." Potter explained to BM the importance of being truthful during the interview and testified that BM was "very clear about that." In addition, Potter asked BM very general questions about her home life, and "very general and non-leading" questions about any touching that may have occurred.

Given these circumstances, we believe that the trial court properly concluded that the statements were admissible, since BM made her statements to Potter with the understanding that they would lead to medical diagnosis or treatment and that the statements were reasonably pertinent to diagnosis or treatment. Thus, Potter's testimony as to BM's interview statements were admissible under Rule 803(4), and this assignment of error is overruled.

[2] Defendant next argues that the trial court committed plain error in not declaring a mistrial *sua sponte*, or alternatively inquiring of the jury whether they could disregard certain testimony given by Potter that was stricken by the court. In the presence of the jury, the prosecutor asked Potter whether BM exhibited any characteristics of a sexually abused child. At that point, the court interrupted the examination to clarify that the witness could testify about abuse in general and about the child's symptoms. After the prosecutor elicited testimony about symptoms of child sexual abuse in general, the following exchange took place:

Q. Based on your formal training in this field and your practical experience, your opportunity to observed [sic] and to talk to [BM], your consultation with Dr. Theodore, other licensed clinical social workers and the team, did you form an opinion as to whether or not [BM] exhibited characteristics of a sexually abused child?

DEFENSE COUNSEL: Objection.

A: Yes, I did.

COURT: Over-ruled.

Q: What is that opinion?

A: My opinion is that [BM] has absolutely been sexually abused.

DEFENSE COUNSEL: Objection.

COURT: Motion to strike.

DEFENSE COUNSEL: Yes, ma'am.

COURT:    Ladies and gentlemen, you are to disregard the statement made by the witness. It was not responsive to the question. The question was whether or not the child exhibited, whether or not [BM] exhibited characteristics consistent with known symptoms and characteristics of sexually abused children.

WITNESS:  Yes, she did.

COURT:    And for the reason that, ladies and gentlemen, because I know I sounded very sharp when I said that. The reason for that is there are only twelve people in this room that can answer that question. Remember I told you that. Only twelve people in the room can answer that question. And even an expert in North Carolina law cannot answer that question. That's the jury province. So you didn't do anything wrong. You know, you just, you did fine. It's just that in North Carolina, those twelve people decide that issue.

A motion for a mistrial is addressed to the sound discretion of the trial judge and is only appropriate when there are such serious improprieties as would make it impossible for the defendant to have a fair trial and impartial verdict under the law. *Black*, 328 N.C. at 200, 400 S.E.2d at 403. "[A]bsent a showing of gross abuse of that discretion, the trial court's ruling will not be disturbed on appeal." *State v. Roland*, 88 N.C. App. 19, 26, 362 S.E.2d 800, 805 (1987), *affirmed*, 322 N.C. 469, 368 S.E.2d 385 (1988). "It is well-settled that where the trial court withdraws incompetent evidence and instructs the jury not to consider that evidence, any prejudice is ordinarily cured." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). Additionally, "our legal system through trial by jury operates on the assumption that a jury is composed of men and women of sufficient intelligence to comply with the court's instructions and they are presumed to have done so." *State v. Glover*, 77 N.C. App. 418, 421, 335 S.E.2d 86, 88 (1985). On appeal, an appellate court presumes that juries follow the trial court's instructions. *State v. Richardson*, 346 N.C. 520, 534, 488 S.E.2d 148, 156 (1997), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 652 (1998).

Here, we see no abuse of the trial court's discretion. First, no motion for a mistrial was made for the court to rule on so defendant

has argued this assignment of error must be analyzed under the plain error rule. Second, immediately after Potter's testimony that in her opinion BM had "absolutely been sexually abused," the trial court instructed the jury that Potter's answer was nonresponsive to the question asked and instructed the jury to disregard that testimony. The trial court then apologized to the jury for sounding so "sharp" and explained to the jury that under North Carolina law, only the jury could make that determination. Given the trial court's prompt and emphatic instructions to disregard Potter's statement, as well as the presumption that the jury has complied with the court's instructions, we conclude that the trial court did not abuse its discretion or commit plain error by not *sua sponte* declaring a mistrial or inquiring further of the jury whether it could disregard the testimony.

### Motion for Appropriate Relief

**[3]** On 6 March 2003, defendant filed a Motion for Appropriate Relief ("MAR") in this Court, and on 9 May 2003, defendant filed a Motion for Summary Disposition of his Motion for Appropriate Relief. In his MAR, defendant alleges that he was denied effective assistance of counsel in violation of his state and federal constitutional rights in that his trial counsel: was unprepared; failed to seek the assistance of a medical and psychological expert; refused to utilize the results of an extensive investigation of a related case conducted by Assistant Public Defender Susan Seahorn of Defender District 15B; and that had his trial counsel employed the trial strategy suggested by Ms. Seahorn, the jury would have acquitted defendant.

The State filed a response, indicating that, while the State does not concede that the factual allegations contained in defendant's MAR are true or that defendant was denied effective assistance of counsel, it appears that it is appropriate for this Court to remand to the superior court for an evidentiary hearing on defendant's MAR. For the reasons explained here, we deny the Motion for Summary Disposition and remand the MAR to the superior court for an evidentiary hearing and ruling by that court.

G.S § 15A-1418(a) provides that a motion for appropriate relief on grounds found in section 15A-1415 may be made in the appellate division when a case is in the appellate division for review. One ground found in section 15A-1415(b), "the conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina," includes defendant's claim of ineffective assistance of counsel. *State v. Watkins*, 89 N.C. App. 599, 608, 366 S.E.2d 876,

881, *disc. review denied,* 323 N.C. 179, 373 S.E.2d 123 (1988). G.S. § 15A-1418(b) provides:

> When a motion for appropriate relief is made in the appellate division, the appellate court must decide whether the motion may be determined on the basis of the materials before it, or whether it is necessary to remand the case to the trial division for taking evidence or conducting other proceedings. If the appellate court does not remand the case for proceedings on the motion, it may determine the motion in conjunction with the appeal and enter its ruling on the motion with its determination of the case.

G.S. § 15A-1418(b) (2001). Although the statute authorizes the appellate court to initially determine a motion for appropriate relief, *State v. Jolly,* 332 N.C. 351, 420 S.E.2d 661 (1992), where the materials before the appellate court, as in this case, are insufficient to justify a ruling, the motion must be remanded to the trial court for the taking of evidence and a determination of the motion, *State v. Wiggins,* 334 N.C. 18, 431 S.E.2d 755 (1993).

No error; Motion for Appropriate Relief remanded.

Judges MARTIN and STEELMAN concur.