IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-261

Filed 3 December 2024

Rowan County, Nos. 19CRS50541-44

STATE OF NORTH CAROLINA

v.

DAVID NEIL BROWN

Appeal by defendant from judgment entered 10 April 2023 by Judge Patrick Thomas Nadolski in Rowan County Superior Court. Heard in the Court of Appeals 23 October 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sondra C. Panico, for the State.*

*Appellate Defender Glenn Gerding by Assistant Appellate Defender, John F. Carella, for the defendant-appellant.*

TYSON, Judge.

David Neil Brown ("Defendant"), a fifty-one-year-old man, and Helen, a fifteen-year-old girl, engaged in a sexual relationship spanning several months. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). Defendant appeals from judgment entered upon the jury's verdicts of guilty for one count of statutory rape of a child fifteen years old or younger, two counts of statutory sex offense with a child fifteen years old or younger, and three counts of indecent liberties with a child. Our review discerns no error in the jury's verdicts or in the judgments entered

thereon.

## I. Background

Helen and her family attended the same church as Defendant and his family. At some point, Helen's family stopped attending church services. When Helen was thirteen or fourteen years old, Helen befriended Defendant's daughter and started riding to church with Defendant's family. In March 2017, Helen started staying over with Defendant's daughter, his wife, and Defendant on Saturday nights at Defendant's house and riding with his family to church on Sunday mornings.

Helen testified she developed a "crush" on Defendant. By the fall of 2017, Helen, Defendant, and Defendant's daughter participated in the church's praise band, which practiced on Tuesday nights. On some Tuesday nights, Defendant would drive Helen back to her home by himself.

During one of those car rides in the fall of 2017, Defendant said he noticed the way Helen had looked at him and asked Helen if she had a crush on him. Defendant also told her to keep her "britches on" and to not have sex because she was "so young." Helen lied and told him she had already had sex because she "did have a crush on him and [she] wanted him to think [she] had had experience." During another one of those car rides in the fall of 2017, Defendant kissed her in his truck when they were parked in front of Helen's house.

A few days before Helen's fifteenth birthday, she attended a wedding along with Defendant and his family. Helen spent that night at Defendant's house. Helen

testified Defendant turned her around and started to touch her body over her clothes while they poked each other and played around. Defendant's wife was in the shower, and his daughter, Helen's friend, was asleep. The next morning, Defendant again turned her around and touched her over her clothes, placed her hand over his penis on the outside of his clothes, and said he would "rock her world."

After the wedding weekend, Helen testified "it was almost every Saturday that something had happened between me and him whether it was us making out or him – it eventually progressed to where he was fingering me" and that was "really all that we did" for a while. She testified and reaffirmed the first time Defendant had digitally penetrated her was after the wedding in October 2017, when she was fifteen years old. Although Helen could not remember the specific occasion, Helen testified she performed fellatio on Defendant in November 2017.

In the months preceding April 2018, Helen and Defendant had discussed having sexual intercourse. On 1 April 2018, Easter Sunday, Helen went to church with Defendant's family and then went home with them for dinner. Helen asked to stay the night at Defendant's house because she did not have school the next day.

Defendant and Helen were the only ones awake in Defendant's home that evening. Helen testified she had a conversation with Defendant, during which she expressed her fear of becoming pregnant if they had sexual intercourse. Defendant told her he previously had a vasectomy and was "shooting blanks." She did not testify Defendant showed her a picture or gave her any evidence of the vasectomy. Helen

later researched what a vasectomy entails.

Helen testified she had sexual intercourse with Defendant that night in the bathroom, and clarified he had inserted his penis into her vagina. According to Helen, they also had sexual intercourse the next day while Defendant's wife and daughter were not at the house. In total, Helen claimed she and Defendant had sexual intercourse probably five more times in various locations in the house, but she could not remember specific details of those encounters. Helen also testified Defendant performed oral sex on her one time in the bathroom, but she thought this was after they had sexual intercourse in April 2018.

Helen and Defendant's relationship ended on 23 December 2018, which was the last time they engaged in any sexual activity. Helen testified she was angry with Defendant "because he wouldn't do anything with me one day."

Helen confided in her friend, Mallory, about her relationship with Defendant. Helen told Mallory she was angry after Helen had found out Defendant had sexual intercourse with his wife. Helen asked Mallory to pretend to be Defendant's wife, and Helen sent Mallory messages to "try to scare him and think that I'm telling [his wife] what he's been doing with me." Mallory "got in trouble, got her phone taken, and her mom found those messages and told [Helen's] mom."

Law enforcement was notified of Helen's and Defendant's relationship and began to investigate. Helen later sat for a recorded interview at the Terrie Hess Child Advocacy Center ("Terrie Hess") with forensic interviewer Beth McKeithan

("McKeithan").

Defendant was indicted for three counts of indecent liberties with a child, two counts of statutory sex offense with a child fifteen years old or younger, and seven counts of statutory rape of a child fifteen years old or younger.

## A. Trial

The State forecasted the evidence they intended to present at trial during opening statements, which included the video recording taken at Terrie Hess "recounting everything that had transpired between her and [Defendant]." McKeithan testified for the State and recalled interviewing Helen in February 2019. McKeithan testified Helen was referred to Terrie Hess because there was an "active investigation." McKeithan conducted the interview in a small room with "a closed-circuit TV into another small room where law enforcement and Department of Social Services can come and watch while the child[ ] [is] being interviewed."

When the State first attempted to introduce State's Exhibit 2, a DVD of the interview, defense counsel objected based on lack of foundation and to the admissibility of the recording as substantive evidence. The trial court allowed the State to examine McKeithan further, who testified a physical medical examination was conducted after the forensic interview.

McKeithan testified interviews came first "so that any concerns that come up during the interview can be addressed in the medical [exam] afterwards." The State attempted to again introduce the interview as substantive evidence, and defense

counsel again objected and requested to *voir dire* the witness.

The trial court allowed defense counsel to *voir dire* McKeithan. Defense counsel renewed and continued to object based on lack of foundation and to its admissibility as substantive evidence. The prosecutor argued the video was admissible under the "statements to medical personnel for medical treatment" exception to hearsay.

In response to questioning from the trial court, McKeithan explained she did not personally explain to Helen the entire process at Terrie Hess, which included a forensic interview and medical examination, because that's "already been covered" prior to the interview. McKeithan testified Terrie Hess's protocol provides the family advocate must inform the child a medical exam follows the forensic interview, and law enforcement should inform the child the contents of the forensic interview and medical exam may be used as evidence in a criminal case. McKeithan said the law enforcement officer who referred the case to Terrie Hess was provided a copy of the DVD of the interview.

The trial court ruled the interview could "come in under the hearsay exception of 803(4)" and its admission was not outweighed by the risk of unfair prejudice. Defense counsel again objected and excepted to the ruling. The interview DVD was admitted into evidence and played in full for the jury.

The video lasted for over an hour. Forty minutes into the interview, McKeithan left the room for over thirteen minutes before returning to answer further

questions. Detective Ryan Barkley, the State's lead investigator, was present for the interview and had watched from another room. During the thirteen minutes McKeithan had stepped outside of the interview room, he had asked McKeithan to clarify several details about Helen's relationship with Defendant.

Detective Barkley testified regarding his search of Defendant's house pursuant to a warrant, his arrest of Defendant, and his search of Defendant's cell phone. Barkley said the cell phone was searched by a forensic analyzer, who used an electronic program to retrieve all the data on Defendant's phone. The program prepares a report Barkley later reviewed.

Barkley testified he saw an image of "a home vasectomy test" while searching through the results of the report. The State introduced the photograph as State's Exhibit 3 without objection. The photograph was admitted solely for illustrative purposes. On cross-examination, Barkley admitted he had no idea when the photograph was made or how it was stored on the device. The State did not introduce text messages or any other information obtained from Defendant's phone explaining why he may have taken an image of the at-home vasectomy test.

During the State's closing argument, the prosecutor said the following regarding State's Exhibit 3, the photograph of the vasectomy test:

> This is also really important. The state introduced a photo of a vasectomy test strip, right, from the defendant's phone. So let's talk about a couple of things. One, why would a 15-year-old know that her best friend's father has had a vasectomy? How does that just come up? Two, if the

defendant has had a vasectomy, why is there a test strip on his phone? He's married. Presumably his wife knows he's had a vasectomy. Why is there a photo of a test strip? And the photo of the te[s]t strip is on the phone, again, there's no date stamp, I recognize that, but it's on the phone during the time that Detective Barkley is doing his investigation. He gave you a narrow window of when this was reported, when his investigation started, and when they did the dump on the defendant's cell phone.

Why would that test strip be there if your wife knows you've had a vasectomy? What does your common sense and everyday reasoning tell you? Does it tell you that, if someone's having sex with someone else who's not comfortable with being ejaculate[ed] inside of, does it tell you that that person would take a photo to alleviate those concerns? Or would you just have the photo of the test strip just to have it? What does your everyday common sense and reasoning tell you? That is very important. And, again, she is 15 years old and knows her best friend's father has had a vasectomy. How does that happen? These are facts that you put together and you use your everyday common sense and reasoning to arrive at your conclusion.

Defendant failed to object during the State's closing argument. Defendant argued during his closing argument no date was shown on the photograph, the photo had nothing to do with the case, and "the [S]tate would have you supply a reason that fits its side of the story."

## B. Verdict and Sentencing

The jury convicted Defendant of all three counts of indecent liberties with a child, both statutory sex offenses, but only one count of statutory rape of a child fifteen years old or younger. Defendant was sentenced to an active term of 192 to 291 months' imprisonment for one of his statutory sex offense with a child fifteen years

old or younger convictions and one indecent liberties with a child convictions. He was sentenced to a second, consecutive sentence for 192 to 291 months' imprisonment for his second statutory sex offense with a child fifteen years old or younger conviction. Lastly, he was sentenced for 192 to 291 months' imprisonment for his statutory rape of a child fifteen years older or younger conviction. Judgment was arrested for his two remaining indecent liberties with a child convictions. Defendant entered timely notice of appeal.

## II.    Jurisdiction

This Court possesses jurisdiction to review a final judgment entered in a criminal case pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III.    Issues

Defendant argues the trial court erred by admitting State's Exhibit 2, an hour-long video interview of the alleged victim coordinated with law enforcement, as substantive evidence over Defendant's hearsay objections. Defendant additionally argues he received ineffective assistance of counsel when his attorney failed to object to either the admission of State's Exhibit 3, an undated photograph of a test strip allegedly taken from Defendant's phone, or the State's alleged improper closing argument asking the jury to consider the photograph as substantive evidence.

## IV.    Hearsay

Defendant argues the trial court erred by admitting State's Exhibit 2, an hour-long video interview of the alleged victim coordinated with law enforcement, as substantive evidence over Defendant's hearsay objections.

## A. Standard of Review

"When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo*." *State v. Johnson*, 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011) (citation omitted).

## B. Analysis

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2023). "Hearsay is not admissible, except as provided by statute[.]" N.C. Gen. Stat. § 8C-1, Rule 802 (2023).

One such exception pertains to "statements for purposes of medical diagnosis or treatment." N.C. Gen. Stat. § 8C-1, Rule 803(4) (2023). This exception applies to "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.*

"Rule 803(4) requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or

treatment." *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000) (citations omitted). "Testimony meeting this test 'is considered inherently reliable because of the declarant's motivation to tell the truth in order to receive proper treatment.'" *State v. Burgess*, 181 N.C.App. 27, 35, 639 S.E.2d 68, 74 (2007) (quoting *Hinnant*, 351 N.C. 277, 286, 523 S.E.2d 663, 669). "In ascertaining the intent of the declarant, 'all objective circumstances of record surrounding declarant's statements' should be considered." *State v. Thornton*, 158 N.C. App. 645, 650, 582 S.E.2d 308, 311 (2003) (quoting *Hinnant*, 351 N.C. 277, 288, 523 S.E.2d 663, 670).

### 1. *State v. McLaughlin*

In *State v. McLaughlin* this Court held statements made by a child victim during a videotaped interview to a nurse at a child advocacy center were admissible hearsay under the medical diagnosis and treatment exception. The "interview reflected the primary purpose of attending to the victim's physical and mental health and his safety[.]" *State v. McLaughlin*, 246 N.C. App. 306, 321 786 S.E.2d 269, 281 (2016).

This Court reasoned the nurse had "explained to [the victim] that he was there for a checkup[,]" and "she asked [the victim] if he had any health issues[.]" *Id.* The nurse "emphasized to [the victim] the importance of knowing what had happened from beginning to end so they could make sure he did not have any diseases or other issues that could affect him for the rest of his life." *Id.* This Court further stated, "having the victim relate the details from beginning to end helped the medical

practitioners [ ] evaluate the extent of the mental and physical trauma to which the victim was exposed, inquire as to whether the victim was out of danger, and discover whether other abusers or victims may have been involved." *Id.*

## 2. *State v. Thornton*

Similarly, in *State v. Thornton*, this Court held a child's statements to a social worker before a medical evaluation were admissible hearsay under the medical diagnosis and treatment exception because the child had "made her statements to [the social worker] with the understanding that they would lead to medical diagnosis or treatment and that the statements were reasonably pertinent to diagnosis or treatment." *State v. Thornton*, 158 N.C. App. 645, 651, 582 S.E.2d 308, 311 (2003).

This Court noted the interview with the social worker and the medical evaluation occurred on the same day. *Id.* at 650-51, 582 S.E.2d at 311. The social worker had "asked [the child] very general questions about her home life, and 'very general and nonleading' questions about any touching that may have occurred." *Id.* The social worker testified the child knew she was in a doctor's office and was aware the social worker interviewing her worked with the doctor. *Id.* The child also was told she needed to be truthful. *Id.*

## 3. *State v. Coffey*

Likewise, in *State v. Coffey*, this Court held a child sexual assault victim's videotaped interview with a forensic interviewer was admissible hearsay under the medical diagnosis and treatment exception because the sexual assault victim's

"statements were made for the purposes of medical diagnosis or treatment, and the statements were reasonably pertinent to diagnosis or treatment." *State v. Coffey*, 275 N.C. App. 199, 205, 853 S.E.2d 469, 475 (2020).

In *Coffey*, the "forensic interviewer testified about the standard procedure at SafeChild, which include[d] conducting a forensic interview and a medical exam for a child-victim's diagnosis." *Id.* at 204, 853 S.E.2d at 475. In addition, "prior to an interview with a child-victim, the child-victim is given a tour, so the child knows '[it] is really important for their health, that we are going to talk about today, we need to kind of know what happened, make sure we are telling the truth, and you are going to see the doctor today for anything that you are worried about with your body.'" *Id.* at 205, 853 S.E.2d at 475. Given the forensic interviewer's testimony, this Court held the videotaped interview was properly admitted under Rule 803(4). *Id.*

### 4. State v. Hinnant

In contrast, the Supreme Court of North Carolina held in *State v. Hinnant* that a child-victim's statements to a psychologist during an interview were not admissible hearsay under the medical diagnosis and treatment exception because the statements "were not reasonably pertinent to medical diagnosis or treatment." *Hinnant*, 351 N.C. at 290, 523 S.E.2d at 671.

In *Hinnant*, the interview was held "approximately two weeks after [the child-victim] had received her initial medical examination." *Id.* The Court did not find evidence in the record the child-victim was informed of "the medical purpose of the

interview or the importance of truthful answers." *Id.* at 289-90, 523 S.E.2d at 671.

The Court explained the child-victim could not have understood the interview was for

medical purposes because the room the interview was held in was "a 'child-friendly'

room" instead of a medical environment. *Id.* at 290, 523 S.E.2d at 671.

### 5.  *State v. Waddell*

Following *Hinnant*, the Court also held a child sexual abuse victim's

statements to a clinical psychologist were not admissible hearsay under the medical

diagnosis and treatment exception because "[t]he interview took place after the initial

medical examination, in a "child-friendly" room, in a nonmedical environment, and

with a series of leading questions." *State v. Waddell*, 351 N.C. 413, 418, 527 S.E.2d

644, 648 (2000).  The Court noted "the record also lacks any evidence that there was

a medical treatment motivation on the part of the child declarant or that [the clinical

psychologist] or anyone else explained to the child the medical purpose of the

interview or the importance of truthful answers." *Id.*

### 6.  *State v. Watts*

Likewise, in *State v. Watts*, this Court held testimony from a child's statements

to an emergency room nurse and two doctors were not admissible hearsay under the

medical diagnosis and treatment exception because no evidence showed the child

"understood she was making the statements to any of the three for medical purposes,

or that the medical purpose of the examination and importance of truthful answers

were adequately explained to her." *State v. Watts*, 141 N.C. App. 104, 108, 539 S.E.2d

37, 40 (2000). The Court reasoned, based on the emergency room nurse's testimony, the child did not understand why she was at the hospital or what was happening when she made statements to the emergency room nurse. *See id.* The Court also pointed out the doctors examined the child "three months after her initial medical examination . . . ." *Id.*

Here, Helen was aware she would be having a physical medical examination after the interview and made her statements for the purposes of medical diagnosis or treatment. Forensic interviewer McKeithan asked Helen if she was "worried or concerned about anything, [or] scared of anybody?" In response Helen stated, "One thing I'm scared about is like my dad. My dad doesn't know it yet. . . . I'm on his insurance . . . He will get a letter that I've been here." This evidence indicating Helen was worried about the visit being billed to her father's health insurance tends to show Helen was aware she was undergoing a medical examination after the interview.

Helen's forensic interview occurred immediately before her medical examination on the same day. McKeithan asked Helen "'very general and nonleading' questions" about her relationship with Defendant. *Thornton*, 158 N.C. App. 645, 650-51, 582 S.E.2d 308, 311. McKeithan testified Terri Hess's protocol requires the family advocate to explain the forensic interview is followed by a medical examination and for law enforcement to inform the victim that any information collected during the forensic interview or medical examination may be used as evidence in a criminal case.

- 15 -

McKeithan also testified, when she spoke with Helen, Helen was aware a medical exam would follow her interview.

Helen's statements were reasonably pertinent to her diagnosis and treatment. McKeithan pointed out the camera to Helen and explained, "I can go back and watch all the things we talked about because I talk with a lot of kids. I want to keep everything straight." McKeithan told Helen, "I . . . need . . . as much detail as you can give me, 'cause the whole point of this is so you don't have to keep talking about it over and over."

McKeithan explained to Helen the importance of telling the truth and asked Helen, "is there anything with your body that you're concerned about or anything?" McKeithan also asked Helen if "anything else like this ever happened with anybody else besides [Defendant]?", if she and Defendant had similar relationships with other people, if Defendant ever hurt her body, or if Defendant ever asked for pictures of her body.

All of McKeithan's statements and questions "reflected the primary purpose of attending to [Helen]'s physical and mental health and [her] safety." *McLaughlin*, 246 N.C. App. at 321, 786 S.E.2d at 281. Similarly, "having [Helen] relate the details from beginning to end helped [McKeithan] to evaluate the extent of the mental and physical trauma to which [Helen] was exposed, inquire as to whether [Helen] was out of danger, and discover whether other abusers or victims may have been involved." *Id.*

The trial court did not err by admitting the recording under the statements for purposes of medical diagnosis or treatment exception to hearsay. *Id.* Defendant's argument is without merit.

## V. Ineffective Assistance of Counsel

Defendant argues he was provided ineffective assistance of counsel when his attorney failed to object to: (1) the admission of State's Exhibit 3, an undated photograph of a test strip allegedly taken from Defendant's phone; and (2) the State's alleged improper closing argument asking the jury to consider the photograph as substantive evidence.

## A. Standard of Review

To demonstrate ineffective assistance of counsel, a defendant must show counsel's performance was deficient and Defendant was prejudiced. *See State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (citation omitted). A deficient performance falls below an objective standard of reasonableness and is so serious it effectively denies the defendant his due process rights. *Id.* "[J]udicial review of counsel's performance must be highly deferential." *State v. Gainey*, 355 N.C. 73, 113, 558 S.E.2d 463, 488 (2002) (citation omitted).

## B. Analysis

Counsel's performance prejudices a defendant only when, "looking at the totality of the evidence, there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State*

*v. Phillips*, 365 N.C. 103, 122, 711 S.E.2d 122, 138 (2011) (citation and quotation omitted).

There is "a strong presumption that counsel's conduct falls within the broad range of what is reasonable assistance." *State v. Fisher*, 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986) (citation omitted). "[W]hen this Court is able to determine that defendant has not been prejudiced by any alleged ineffectiveness of counsel, we need not consider whether counsel's performance was deficient." *State v. Augustine*, 359 N.C. 709, 719, 616 S.E.2d 515, 524 (2005) (citations omitted).

### 1. *Admission of Photograph*

Defendant argues that his counsel failed to object to the admission of a photograph of a home vasectomy test, and as a result, he was provided ineffective assistance of counsel. A defendant is not prejudiced by their counsel's failure to raise a claim that would have been unsuccessful. *State v. Waring*, 364 N.C. 443, 513-14, 701 S.E.2d 615, 659 (2010); *State v. Banks*, 367 N.C. 652, 653, 766 S.E.2d 334, 336 (2014).

Here, Defendant's objection to the admission the photograph of a home vasectomy test would have been unsuccessful. Our General Statutes provide:

> Any party may introduce a photograph: video tape, motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. This section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness.

N.C. Gen. Stat. § 8-97 (2023).

Rule 403 of the Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2023).

"The decision whether to exclude evidence under Rule 403 of the Rules of Evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion." *State v. Campbell*, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (citations omitted). "[T]he trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision." *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000) (citation and quotation marks omitted).

The trial court properly acted within its discretion in admitting the photograph. The photograph was admitted for illustrative purposes only and was corroborative of Helen's testimony that Defendant had a vasectomy. The trial court's decision was not so arbitrary that it could not have been supported by reason.

Additionally, defense counsel extensively cross-examined Detective Barkley about the photograph, highlighting the absence of a date on the photograph and the State's reliance on one photograph out of many on Defendant's phone. There is no

reasonable probability in the absence of the defense counsel's alleged error, the result of the proceeding would have been different.

### 2. *Closing Statement*

Defense counsel's failure to object to the State's closing argument did not deprive defendant of effective assistance of counsel. To succeed on an ineffective assistance of counsel argument, the defendant must demonstrate counsel's failure to object was both deficient and "infected the trial with unfairness and thus rendered the conviction fundamentally unfair." *State v. Augustine*, 359 N.C. 709, 727, 616 S.E.2d 515, 529 (2005) (quoting *State v. Carroll*, 356 N.C. 526, 537, 573 S.E.2d 899, 907 (2002)).

The argument presented by the State surrounded Helen's knowledge of Defendant's prior vasectomy. The State argued a fifteen-year-old's knowledge of her best friend's dad's vasectomy supports the inference the two were involved in a sexual relationship. The State may, during its closing argument, "create a scenario of the crime committed as long [as] the record contains sufficient evidence from which the scenario is reasonably inferable." *State v. Frye*, 341 N.C. 470, 498, 461 S.E.2d 664, 678 (1995).

Both the photograph of the vasectomy test strip found on Defendant's phone and Helen's testimony of her knowledge of the vasectomy were admitted into evidence at the time of the State's closing argument. An adequate evidentiary basis supported the State's argument.

Even excluding the vasectomy test strip, Helen's testimony was properly admitted and supported the State's argument. This supplemental source of evidence indicating Helen was aware of Defendant's purported vasectomy tends to show it was unlikely an objection to the State's arguments would have materially influenced the verdict or prejudiced Defendant. Defendant has failed to show his counsel's performance was deficient or prejudicial. Defendant was not deprived of his right to effective assistance of counsel. *See id.*

## VI. Conclusion

The trial court did not err by admitting the Terrie Hess Center's video interview of Helen under the "statements for purposes of medical diagnosis or treatment" exception to hearsay. Defendant was not prejudiced by any purported ineffective assistance of counsel.

Defendant received a fair trial, free from prejudicial errors he preserved and argued on appeal. We discern no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Chief Judge DILLON and Judge HAMPSON concur.